No. 2025-___

# United States Court of Appeals for the Federal Circuit

In re Qualcomm Incorporated,
*Petitioner*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
Case No. 6:21-cv-00346-ADA, Hon. Alan D Albright

## Qualcomm Incorporated's Petition for Writ of Mandamus

March 19, 2025

Michael Hawes
Baker Botts L.L.P.
910 Louisiana St
Houston, TX 77002
(713) 229-1234 (telephone)
michael.hawes@bakerbotts.com

Douglas Kubehl
Nolan McQueen
Baker Botts L.L.P.
2001 Ross Ave., Suite 900
Dallas, TX 75201
(214) 661-4486 (telephone)
doug.kubehl@bakerbotts.com
nolan.mcqueen@bakerbotts.com

*Counsel for Qualcomm Incorporated*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

**Case Number**

**Short Case Caption**  In Re Qualcomm Incorporated

**Filing Party/Entity**  Qualcomm Incorporated

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/19/2025

Signature:  /s/ Michael Hawes

Name:  Michael Hawes

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Qualcomm Incorporated | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable      ☐   Additional pages attached

| | | |
|---|---|---|
| Nicholas A. Baniel, Baker Botts, LLP | | |
| Jeffery S. Becker, Baker Botts LLP | | |
| Joseph Andrew Grado, Baker Botts L.L.P. | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☑  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable      ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT ...............................................................................1

INTRODUCTION ...............................................................................1

ISSUE PRESENTED ...........................................................................3

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................3

    I.    Red Rock Accuses Products Developed in NDCA of Infringement.....3

    II.    Qualcomm and Apple's Connections to WDTX Are at Most a Mere Subset of the Knowledge and Evidence in NDCA ..............................6

    III.    Qualcomm and Apple' Transfer Briefing ..............................................9

    IV.    The District Court's Denial of Transfer .............................................10

REASONS FOR ISSUING THE WRIT...................................................12

    A.    The district court incorrectly determined the cost and attendance of willing witnesses factor to be neutral, despite having identified numerous critical NDCA witnesses with specialized knowledge not possessed in WDTX, and no such witnesses in WDTX.....17

    B.    The district court incorrectly determined the relative ease of access to sources of proof to "slightly disfavor" transfer by ignoring record evidence and prioritizing information regarding unaccused silicon wafers.........................................................26

    C.    The district court improperly speculated on which third-party witnesses likely would come to trial in order to conclude that the "availability of compulsory process to secure attendance of witnesses" disfavors transfer.....................................................30

    D.    The district court ignored the overwhelming record evidence of local interest in the transferee forum .......................................32

CONCLUSION ................................................................................34

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION .....35

CERTIFICATE OF SERVICE ................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .....................................................12, 22

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022)...........................22

*In re Chamber of Com. of United States of Am.*,
   105 F.4th 297 (5th Cir. 2024) .....................................................13, 14

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) .....................................................*passim*

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) .....................................................22

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ...........................30

*In re Google LLC*,
   2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ....................................... 26-27

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) .............................................13, 17, 26

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021)...........................22

*In re HTC Corp.*,
   889 F.3d 1349 (Fed. Cir. 2018) .....................................................22

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. 2021) .........................16, 30, 31, 32

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) .....................................................22, 30

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ........................................................... 13-14

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ................................................15, 28, 32

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ........................................................*passim*

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014) ..........................................................34

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .........................................12, 13, 21, 34

*Jarvis Christian Coll. v. Exxon Corp.*,
    845 F.2d 523 (5th Cir. 1988) ...............................................................9

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
    122 F.4th 860 (Fed. Cir. 2024) ..........................................................16

*Red Rock Analytics, LLC v. Samsung Electronics Co.*,
    2:17-cv-101-RSP (E.D. Tex.) ............................................................29

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996). .................................................... 9-10

## OTHER AUTHORITIES

Fed. R. Evid. 702 ....................................................................................2

## RELIEF SOUGHT

Qualcomm Incorporated (Qualcomm) respectfully requests this Court issue a writ of mandamus to the United States District Court for the Western District of Texas (WDTX) directing the district court to vacate its order denying Qualcomm and Apple Inc.'s (Apple) motion to transfer and enter an order transferring the case to the United States District Court for the Northern District of California (NDCA).

## INTRODUCTION

The district court's decision is flawed on its own terms with respect to the most important transfer factor. The district court acknowledged numerous willing NDCA witnesses with relevant knowledge that is unique, as compared to any potential WDTX witnesses, but *no WDTX willing witnesses* with knowledge unique compared to NDCA witnesses.  Applying the district court's own "unique knowledge" assessment, the court clearly erred in finding the willing witness factor "neutral" when it should have weighed heavily in favor of transfer.  The court also legally erred in disparaging witness convenience because (i) any trial is inconvenient and (ii) Apple and Qualcomm have premises in WDTX, which both conflict with the Fifth Circuit's 100-mile rule.  On the evidentiary record, the remaining factors favor transfer or are neutral and no factor weighs against transfer. The district court's decision to deny transfer was a clear abuse of discretion.

Florida Corporation Red Rock Analytics LLC filed this suit in WDTX,

1

despite having Florida as its principal place of business, alleging certain claims of U.S. Patent No. 7,346,313 against Qualcomm and Apple. Red Rock's '313 Patent, entitled "Calibration of I-Q Balance in Transceivers," discloses using a "calibration signal" in the receive stage of existing transceivers to correct "mismatches in gain." Appx68. Red Rock's principal, and the sole named inventor on the '313 Patent, is also located in Florida.

This case should be transferred to NDCA. Qualcomm and Apple provided unrebutted evidence that NDCA witnesses have unique and relevant knowledge and that the sources of relevant proof all are more readily accessible in NDCA. No witness with unique knowledge relevant to this case was identified in WDTX. Tellingly, Red Rock resorted to hiring "transfer experts" to offer testimony without any relevant field of expertise to speculate unreliably on the knowledge and job responsibilities of Qualcomm and Apple's employees. The "expert analysis" that the district court credited merely re-interpreted sources like online LinkedIn profiles and does not measure up under Fed. R. Evid. 702. Red Rock seeks to open the door to obscuring relevant direct evidence regarding the transfer factors with conclusory "expert testimony" having no basis in a field of study. Focusing on the proper evidence of record establishes that NDCA is clearly more convenient.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in denying transfer to NDCA.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## I.    Red Rock Accuses Products Developed in NDCA of Infringement

In April 2021, Florida Corporation Red Rock sued Qualcomm and Apple in WDTX, alleging infringement of the '313 Patent, which describes and claims methods and systems for calibrating gain imbalance between the I and Q channels in portions of a transceiver. Red Rock accuses the "I-Q gain imbalance calibration" feature in Qualcomm's Wi-Fi 6 and 5G wireless transceivers and Apple's products that include those transceivers.  Red Rock has no employees or offices in WDTX, nor any other apparent connection there. Red Rock's principal—John Cafarella, the sole named inventor on the asserted patent—is located in Florida. Red Rock's only other witness is its consultant, Jeffrey Fischer, located in San Diego, California.

Qualcomm maintains a Santa Clara office in NDCA. The Qualcomm's employees who work or worked on the accused features are located in either NDCA or San Diego. The six Qualcomm teams responsible researching, designing, developing, and implementing of the Accused Qualcomm's Wi-Fi 6 Products— including I-Q calibration algorithms—are in NDCA. Appx114-115, ¶¶ 2, 8. These teams included six specifically-identified employees, Appx115-117, ¶¶ 9, 11–13, who each indisputably possesses unique relevant knowledge regarding the Accused

Products. *Id.* Similarly, Qualcomm's personnel responsible for the research, design, and development of algorithms and techniques relating to any calibration of I-Q imbalance for the Accused 5G Products are in San Diego. Appx121-122, ¶¶ 2, 6. Personnel knowledgeable of modem firmware and modem hardware for Accused 5G products also are located in NDCA, and so are persons with knowledge of the Wi-Fi physical layer, firmware, and hardware systems in the Accused Wi-Fi 6 products. Appx122, ¶ 7, Appx117, ¶ 13. U.S.-based finance personnel for Qualcomm also are in California. Appx123, ¶ 12, Appx117, ¶ 14.

Apple is headquartered in NDCA. Apple's management, primary research and development, and marketing facilities are located in NDCA. Appx127-128, ¶ 3. As of August 2021 (the date of the transfer motion), Apple employed more than 35,000 employees in NDCA. Appx127-128, ¶ 3. The Apple teams responsible for testing and integrating the accused Qualcomm's 5G chips into the Accused Apple Products are mostly based in NDCA and San Diego, and to a lesser extent in China. Appx129-130, ¶¶ 8-10. None of them are in Texas. *Id.* Due to their testing and integration of the accused Qualcomm's 5G chips, likely Apple technical witnesses include Sushant Salgar, a Senior Manager in Apple's RF Productization Team, who is responsible for developing software tools for testing the Accused Apple Products. Appx129-130, ¶ 8. Another likely witness is Kexin Ma, a Senior Manager in Apple's Cellular Product Software Group who is responsible for developing firmware that interfaces

with the accused Qualcomm's 5G chips. Appx130, ¶ 9. Apple's likely marketing, licensing, and finance witnesses are also located in NDCA. Appx131-132, ¶¶ 12-15. Apple also identified relevant evidence in this case located in NDCA, but not in Texas. Appx1009-1012 at 13–16. Specifically, the 5G software and firmware source code is stored on California servers including one in NDCA. Appx129, ¶ 7. Other relevant documents, including documents that may be generated and stored locally by members of the relevant teams, are in NDCA. Appx125, ¶ 21, Appx119, ¶ 23. Any Apple documents relevant to the integration and testing of the Qualcomm's 5G chips in Apple's Accused Products are generated and located in NDCA and San Diego. Appx129, ¶ 7. Apple documents relating to financial information of the Accused Apple Products and licensing documents are generated and located in NDCA. Appx130-131, ¶ 11, Appx422-423 at 29:12-30:10, Appx577-579 at 167:15-169:22, Appx628-629 at 213:5-22.

Third-party witnesses in NDCA also are relevant to Red Rock's infringement allegations. At least two individuals—Rishi Mohindra and Tong Zhang—reside in NDCA. Appx100-101. Mohindra is the named inventor of several pieces of prior art on the face of the '313 Patent and in Qualcomm and Apple's invalidity contentions. *Id.* Zhang is the author of prior art cited in Red Rock's Complaint and infringement contentions. *Id.*

5

## II. Qualcomm and Apple's Connections to WDTX Are at Most a Mere Subset of the Knowledge and Evidence in NDCA

While Qualcomm and Apple maintain WDTX offices, the record is undisputed that none of Qualcomm or Apple's Texas employees possess unique information relating to the relevant features of any Accused Products. No Texas-based Qualcomm's employees work on any calibration of I-Q imbalance. Appx116-119, ¶¶ 10, 16–22. No Apple employees who work with Qualcomm's 5G chips are located in WDTX. Appx455-458 at 59:13-61:13, Appx511-512 at 108:15-109:21.

Red Rock identified LinkedIn profiles of four members of Qualcomm's Radio Frequency Integrated Circuit (RFIC) Team in Richardson, Texas[1]. Appx196-203, ¶¶ 99–112, Appx205-206, ¶¶ 118–120. Based on those profiles, Red Rock speculated that all four must have knowledge of I-Q calibration in the accused 5G transceivers and of "the technical value and importance of the '313 Patented invention, including the value of that technology to Qualcomm's customers and the impact of that technology on throughput performance." Appx205-206, ¶ 120. However, those LinkedIn profiles mention none of those technologies. *Id.* The knowledgeable employees are resident in NDCA. *See* Appx1061, Appx1081 (identifying two members of RFIC teams in NDCA, and others throughout

---

[1] Richardson is in the Northern District of Texas (NDTX) and over 100 miles from the courthouse in Waco. Yet, the court failed to apply the Fifth Circuit's 100-mile rule to these willing witnesses.

California); *see also* Appx117, ¶¶ 12–13 (hardware, RFA connectivity design, and RF Systems teams located in NDCA).

Red Rock also identified three DSP team employees of Qualcomm's Austin office. Appx204, ¶¶ 115–116, Appx207-209, ¶¶ 125–33. Red Rock speculated that those employees must have knowledge of "the accused 5G transceivers," "the importance of I-Q gain imbalance calibration for 5G and Wi-Fi 6 transceiver performance and standard compliance," and "direct knowledge about the accused DSP," all of which have relevance only in the context of I-Q calibration. Appx196-197, ¶ 99, Appx202-203, ¶ 112, Appx207, ¶ 126, Appx209, ¶ 132. However, it was undisputed that those employees have no knowledge or involvement with the accused I-Q calibration features. Appx1212-1215, ¶¶ 10–13, 15.

For Apple, Red Rock erroneously contended that Apple's hardware team in Austin has knowledge of "the infringing features on Apple's 5G chip." Appx150-151 at 9-10. However, Red Rock has never alleged infringement by "Apple's 5G chip" in its complaints or infringement contentions; indeed, no such 5G chip was commercialized prior to the expiration of Red Rock's patent. Thus, Red Rock's reliance on the Austin hardware team is irrelevant.

Red Rock also identified five Apple Texas employees as "likely" having relevant knowledge about the accused technologies based purely on speculation: Angelika Schneider, Fikret Dulger, Paul Fontaine, John Marcincavage, and Seydou

Ba.  Mr. Fontaine submitted a declaration explaining his, Ms. Schenider's, and Mr. Dulger's lack of knowledge relevant to the issues. Appx1170, ¶ 2.  Mr. Marcincavage submitted a declaration explaining his lack knowledge relevant to the issues.  Appx1174-1175, ¶ 3.  Seydou Ba, the only alleged technical witness Red Rock chose to depose, testified about his lack of knowledge relevant to the issues.  Appx756-757 at 93:22-95:9, Appx728 at 67:19-68:2, Appx738 at 77:7-19, Appx673 at 17:1-6, Appx670-671 at 14:3-25.

Red Rock also identified fourteen Apple employees in Texas "likely" knowledgeable about damages topics.  But again, Red Rock's speculation was rebutted by numerous declarations and deposition testimony.  Kai Oeffner, the only alleged damages witness Red Rock chose to depose, testified about his lack of knowledge relevant to the issues.  Appx773-775 at 7:21-9:21, Appx777-779 at 11:10-13:17 (testimony about limited access to financial databases).  As to the other individuals identified by Red Rock, Apple submitted a dozen declarations demonstrating their lack of relevance.  Appx1188-1190, Appx1200-1202, Appx1166-1168, Appx1194-1196, Appx1206-1208, Appx1176-1178, Appx1191-1193, Appx1185-1187, Appx1179-1181, Appx1203-1205, Appx1197-1199.

Red Rock also alleged that third-party Samsung Austin Semiconductor's ("SAS," or "SECS2") fabrication facility possessed information relevant to the Accused Products. But it is undisputed that SAS fabricates unaccused silicon *wafers*,

not Accused Products. Red Rock's technical expert admitted that SAS wafers require multiple additional steps before they can be turned into "dies" incorporated into "chips" capable of infringing. Appx1451-1452 at 116:13–118:9. The inventor also denied the relevance of SAS to infringement of the '313 Patent:

> Q The '313 patent doesn't claim any method for fabrication of wafers, correct?
> **A I think I can answer that one. It doesn't talk about fabrication at all.**

Appx898-900 at 77:6–78:21 (cleaned up). Despite that irrelevance, Red Rock continued to insist, based on its expert's unsupported conclusory statements, that SAS possessed witnesses and calibration testing data relevant to measuring gain imbalance between the I and Q channels in a transmitter and receiver portions of a transceiver, even though that is not even technically possible because many steps of processing would be required before the hundreds or thousands of dies within those wafers could be transformed into operative "chips."

## III.   Qualcomm and Apple' Transfer Briefing

Qualcomm and Apple moved to transfer the case to NDCA in August 2021. Red Rock then conducted venue discovery and served reports by asserted "transfer experts."[2] Qualcomm and Apple identified the relevant documents and likely

---

[2] Transfer decisions are discretionary judicial decisions. *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). Relying on an "expert" to assess discretionary factors should raise the same "utmost caution" as relying on an

witnesses that are primarily in NDCA. Red Rock never rebutted the unique relevance of the identified witnesses and evidence in NDCA.

The parties completed briefing in April 2022. On June 13, 2022—days before the *Markman* hearing was scheduled—the Court *sua sponte* issued a stay of the case to decide the transfer motion.

## IV.    The District Court's Denial of Transfer

On February 12, 2025, the district court denied Qualcomm and Apple's motion to transfer. In applying the Fifth Circuit's eight public and private interest factors, the district court acknowledged that "[t]he most important factor in the transfer analysis is the convenience of the witnesses," (Appx6) and conceded that (i) "Defendants point to witnesses with a *greater amount of knowledge* related to the Accused Product's I-Q calibration," (ii)  "Apple's Cupertino witnesses would *clearly be better served* with the trial being held in NDCA," and (iii) that "*several NDCA witnesses* [for both Apple and Qualcomm]—particularly for algorithms relating to calibration of I-Q imbalance—[have] *specialized knowledge that witnesses found in WDTX do not seem to possess*." Appx10-11, Appx13.[3] After acknowledging the NDCA witnesses with unique knowledge, *and without referencing a single party witness in WDTX with unique knowledge*, the district court

---

expert to decide claim construction. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996).  Especially, when no field of transfer expertise exists.
[3] Emphasis added unless otherwise noted.

confusingly concluded that "both venues contain witnesses with specialized knowledge not found in the other venue" and therefore found "the balance [is] nearly equal" on this factor. Appx13. The district court discounted the NDCA witnesses by suggesting that Qualcomm and Apple's Austin offices "mitigated" any travel inconvenience, but did not identify how working in Texas was feasible or relevant under applicable law. Appx11-12.

The district court also found the "relative ease of access to sources of proof" factor "slightly" disfavored transfer, crediting only Red Rock's assertions that non-party SAS possessed relevant technical and testing documents without weighing Qualcomm and Apple's undisputed evidence of servers and unique documents in NDCA. Appx16.

The district court further found the "availability of compulsory process to secure the attendance of witnesses" weighed against transfer by discounting prior art witnesses located in NDCA based on its own experience and finding that at "at least one" unnamed witness from SAS will be called to testify. Appx18-19. The district court found the "court congestion" factor to be neutral. Appx22. Finally, although the district court began its analysis by characterizing the "local interest" factor as "lean[ing] slightly in favor of transfer," it ultimately weighed this factor as neutral. Appx24-25. The district court reached this conclusion without addressing Qualcomm's unique I-Q calibration work in NDCA and looking only at hardware

development, which occurs both in WDTX and NDCA. *Id*. The district court found the remaining three factors to be neutral, which were not disputed by the parties. Appx27.

## REASONS FOR ISSUING THE WRIT

Mandamus relief is available to "correct a clear abuse of discretion or usurpation of judicial power." *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (citation omitted). A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief he desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen*") (citation omitted). For mandamus petitions challenging a failure to transfer for convenience, this three-part test "reduces to the first factor" because an appeal following a final judgment is not an adequate alternative and an erroneous failure to transfer may result in judicially-sanctioned, irreparable procedural injury. *See In re Apple*, 979 F.3d at 1336–37.

This Court follows regional-circuit standards governing transfer-for-convenience motions and the Fifth Circuit analyzes private and public interest factors to compare the relative convenience of the venues. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (citation omitted). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (citation omitted). A case should be transferred when the movant has shown good cause. *Id.* The Fifth Circuit has recently clarified that, "to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 304 (5th Cir. 2024) (emphasis in original).

The Fifth Circuit uses the 100-mile rule to assess willing witness convenience, which dictates the "factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *See In re TikTok, Inc.*, 85 F.4th 352, 361–62 & nn.8–9 (5th Cir. 2023); *In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024). This factor is not affected by any party offices in the district from which a witness can work.  With regard to the ease of access to sources of proof, "the

location of evidence bears much more strongly on the transfer analysis when [] the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

With regard to the local interest factor, the Fifth Circuit has clarified this factor "is only concerned with non-parties' interest in adjudicating the case." *In re Clarke*, 94 F.4th at 511 ("[w]e do not consider the parties' connections to the venue because the local interest analysis is a public interest factor."). "Localized interests are present when 'the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty.'" *In re Chamber of Com.*, 105 F.4th at 308 (quoting *Clarke*). With regard to the court congestion factor, "[t]hough the district court may, in exercising its discretion, conclude that its docket is more congested than the transferees', that conclusion—which, at its core, is an uninformed guess—alone cannot be dispositive." *In re Clarke*, 94 F.4th at 515. "Parties' assertions that their case needs to be decided quickly should not affect the weight of this factor." *In re Chamber of Com.*, 105 F.4th at 310.

Applying this precedent, Qualcomm has a clear and indisputable right to the writ. It is undisputed this case could have been brought in NDCA. Appx6. Whether it should be transferred thus turns on the convenience factors, which, when correctly analyzed under Fifth Circuit precedent, show that NDCA is clearly more convenient. This is not a case where the district court simply used its position as factfinder to

weigh facts against Qualcomm and Apple in a matter that resulted in a denial of transfer. Rather, the district court repeatedly misapplied precedent and ignored unrebutted evidence to reach the incorrect result.

The district court's significant mistakes were fourfold. First, based on the analysis in the order, the district court should have found that the willing witness factor weighs heavily in favor of transfer. The district court identified only NDCA willing witnesses as having unique knowledge, but then found this factor neutral. Appx11-13. This is clear error. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("Even if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer."). The district court also incorrectly discounted the inconvenience of dozens of NDCA witnesses by ignoring the Fifth Circuit's guidance to consider willing witnesses' inconvenience as a linear correlation to distanced traveled. *See In re TikTok*, 85 F.4th at 361. The district court asserted that Qualcomm and Apple's Austin offices could "mitigate" inconvenience to the NDCA-based employees, contrary to legal precedent and not based on any record support.

Second, the evidence is unrebutted that relevant source code and documents are in NDCA, whether stored locally or on NDCA servers. Thus, the access to sources of proof factor also favors transfer. The district court relied instead on speculation and conclusory "transfer expert" testimony that non-party SAS

possessed documents relevant to calibration testing, while ignoring that Red Rock's expert *admitted* that SAS produces silicon wafers that are mere non-functional raw materials that require multiple manufacturing steps to be turned into accused products. *See, e.g.*, Appx1451-1452 at 116:13–118:9. Such conclusory and contradicted assertions are insufficient support. *See Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 875 (Fed. Cir. 2024) (concluding that "conclusory assertions" of an "'all' data generalization" do not provide "discernible grounding that can reasonably support the generalization" even when combined with other testimony). Analyzing this factor on the record weighs the unrebutted statements regarding evidence in NDCA against the (at best) conclusory speculation that SAS has relevant evidence, and finds this factor favors transfer.

On the compulsory process factor, the district court ignored this Court's repeated guidance to not disregard prior art witnesses simply because, in the district court's experience, such witnesses are unlikely to appear at trial. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. 2021). Instead, the district court credited Red Rock's speculation that some unnamed SAS witness would possess relevant information. Appx18-19. At minimum, analyzing this factor would have afforded proper weight to prior art witnesses in NDCA under this Court's precedents, while affording little—if any—weight to speculation that SAS witnesses are likely to appear at trial.

16

Finally, the district court incorrectly found that the local interest factor was neutral. NDCA has a strong local interest in this case, and WDTX has none. In fact, WDTX has no material connection to the case: Red Rock is not based in WDTX, it has no employees or witnesses there, and the events giving rise to the suit did not occur there. Where the record before the appellate court establishes important factors that favor transfer and no factor weighs against transfer, the "decision to deny [a] motion to transfer was a clear abuse of discretion." *In re Google LLC*, 58 F.4th at 1385.

**A.    The district court incorrectly determined the cost and attendance of willing witnesses factor to be neutral, despite having identified numerous critical NDCA witnesses with specialized knowledge not possessed in WDTX, and no such witnesses in WDTX.**

All agree that "[t]he most important factor in the transfer analysis is the convenience of the witnesses." Appx6. With respect to this factor, the district court acknowledged that "Defendants point to *witnesses with a greater amount of knowledge* related to the Accused Product's I-Q calibration," that "Apple's Cupertino witnesses would *clearly be better served* with the trial being held in NDCA," and that "*several NDCA witnesses* [for both Apple and Qualcomm]— particularly for algorithms relating to calibration of I-Q imbalance—[have] *specialized knowledge that witnesses found in WDTX do not seem to possess*." Appx10-11, Appx13. With respect to Red Rock's witnesses, the district court recognized that "the location of Red Rock's sole employee and inventor of the

Asserted Patent is neutral." Appx11-12. Against this backdrop, however, the district court incorrectly concluded that "the balance [is] nearly equal" and that "both venues contain witnesses with specialized knowledge not found in the other venue." Appx13. However, the district court *only* identified "several NDCA witnesses" as having the specialized relevant knowledge and identified *no witness* in WDTX fitting that description. That is not surprising because, despite the "novel" use of transfer expert testimony allowed by the court, no evidence of such witness was found.  Appx1094 at 6:9-16.

The overwhelming majority of the team members who work on I-Q calibration features are located in California, and Qualcomm specifically identified four NDCA employees responsible for the Accused Wi-Fi 6 products that are directly involved in the design of Accused Products. *See* Appx116-177, ¶ 11. Qualcomm's sworn declarations are unrebutted that the accused features are designed by employees in either NDCA (Appx115-117, ¶¶ 9–13, Appx122, ¶ 7) or in California near NDCA (Appx115-116, ¶ 9, Appx122, ¶ 7), but not in Texas (Appx115-116, ¶¶ 9–10, Appx122, ¶¶ 7–8).

For Apple, it is undisputed that the teams responsible for testing and integration of the Accused Qualcomm's 5G chips into the Accused Apple Products are all in NDCA, San Diego, and China.  Specifically, Apple identified Senior Managers responsible for testing and integration of the Accused Qualcomm's 5G

chips, including Sushant Salgar and Kexin Ma. It is also undisputed that the NDCA-based finance, marketing, and licensing teams have unique access to financial data and knowledge relevant to this case.

By contrast, Red Rock failed to identify anyone in WDTX has relevant specialized knowledge not found in NDCA. For Qualcomm, Red Rock and its expert rely primarily on four Qualcomm's employees and an RFIC team in Richardson, Texas. In Austin, Red Rock merely pointed to three specific employees in Qualcomm's digital signal processor (DSP) team. But Red Rock did not show that any of these witnesses had any specialized knowledge related to the accused features. Qualcomm showed (i) that this team did not possess relevant knowledge of the accused functionality (*see* Appx1212-1215, ¶¶ 10–13, 15), and (ii) that several hundred California-based Qualcomm's employees work on these very same teams and that hundreds more in NDCA and SDCA are also involved in the general design work of the type relied on by Red Rock. Appx1059-1088. Moreover, Qualcomm conclusively demonstrated that none of these employees possess relevant knowledge, much less unique relevant knowledge as *Clarke* requires.

For Apple, it is undisputed that ***none*** of the WDTX employees Red Rock identified have any involvement with the Accused Qualcomm's 5G chips. None of the employees identified by Red Rock have any specialized knowledge relevant to the case. For example, Red Rock relies on Apple employees' ***general*** knowledge of

I-Q signals—which are fundamental topics in wireless communications that alone do not provide any indication that such witnesses would be relevant to the case, much less called as a trial witness.  It also is undisputed that Apple's 5G chip is not accused in this case, and thus Red Rock's reliance on Texas-based engineers who have worked on Apple's 5G chip are irrelevant to this case.  Red Rock's identified "likely" damages witnesses from Apple all lack any specialized knowledge about financial data likely relevant in the case; the fact that employees have access to iPhone sales records, for example, is not an indication that they would be called as a trial witness.

Thus, it is not surprising that the district court's order specifically identified only NDCA witnesses as having specialized knowledge.

### a. Transfer Would Be Significantly More Convenient for NDCA Witnesses

It would be *significantly* more convenient for each of these NDCA witnesses if this case were transferred. *In re Clarke*, 94 F.4th at 508. The district court attempts to marginalize the inconvenience to witnesses in NDCA by making two legally erroneous arguments that, if accepted, effectively would preclude *any* witness from supporting this most important factor.

> 1    *The court's reliance on Qualcomm and Apple's Austin offices to mitigate the inconvenience to NDCA witnesses*

The district court asserted that NDCA witnesses can be discounted because

Qualcomm and Apple have offices in Austin, Texas, and according to the district court, those offices would "mitigate interruptions to their workflow and, as a result, would reduce the cost of attendance for these witnesses." Appx11. But this reasoning is flawed and amounts to an abuse of discretion for the following reasons.

First, the Court's reasoning has no support in law. The Fifth Circuit's 100-mile rule commands that inconvenience to witnesses "increases in direct relationship to the additional distance *to be traveled*." *Volkswagen*, 545 F.3d at 317. This inconvenience "linearly scales with the additional distance they must travel." *See In re TikTok*, 85 F.4th at 361–62 & nn.8–9; *In re Clarke*, 94 F.4th at 514. Contrary to the district court's belief that Qualcomm and Apple's offices mitigate this inconvenience, the Fifth Circuit focuses this factor on the costs associated with travel away from home: "additional travel time," "meal and lodging expenses," being "away from their *regular* employment," and "personal costs associated with being away from work, family, and community." *See In re TikTok*, 85 F.4th at 361 (quoting *Volkswagen*, 545 F.3d at 317). Instead, witnesses in NDCA must travel over 1,700 miles to testify in Waco, Texas. The district court wrongly interpreted this precedent, and instead should have found this travel to be a *significant* inconvenience that clearly favored transfer. *See In re Clarke*, 94 F.4th at 514 ("By transferring the case to D.D.C., Clarke—the primary witness in this case—*must now travel over one thousand additional miles to testify*. As should be plain, *that is a massive*

*inconvenience*."). Indeed, this Court has found on numerous occasions that witnesses in California are inconvenienced traveling to WDTX, despite recognizing a defendant's presence within the venue. *See, e.g.*, *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *2, *4 (Fed. Cir. Sept. 27, 2021) (finding inconvenience for NDCA employees despite Defendant's office in WDTX); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318–19 (Fed. Cir. 2021) (same); *In re Apple*, 979 F.3d at 1342 (same); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *2 (Fed. Cir. Apr. 22, 2022) (same). Under Fifth Circuit and this Court's precedents, Qualcomm and Apple's offices in Austin do not mitigate inconvenience to NDCA witnesses.

Second, the district court failed to cite ***any*** factual evidence for its assumption that the NDCA witnesses are able to meaningfully work at the Texas campuses such that it could credibly discount the acknowledged inconvenience to these witnesses to travel from California to Texas. No discovery was taken on this issue, and no evidence can be found in the record. Thus, it is an abuse of discretion to make this finding without any factual development in the record.

Third, the district court's reasoning would render this factor effectively meaningless in any venue transfer analysis. It is axiomatic that *every* non-foreign defendant has an office in the transferee district; that is the *only* way the case could have been brought in that district consistent with the patent venue requirements. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (defining patent venue

requirements); *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (applying general venue statute to foreign patent defendants). The district court's approach would discount the importance of "several" NDCA witnesses with "specialized knowledge" just based on having offices in WDTX and would all but eliminate any defendant's ability to satisfy this factor. The district court went well beyond the bounds of the law with this analysis.

> 2   *The court's reliance that witnesses are inconvenienced "regardless of if the courthouse is nearby" is contrary to the law*

Similarly, the district court erred by contending that the "reality of modern patent trials" means that all witnesses are heavily inconvenienced regardless of their location, and thus any additional inconvenience of remote witnesses would be marginal compared to this "baseline cost." For this proposition, the district court cited its own experience of patent trials, untethered from any studies or authority and the record below:

> The reality of modern patent trials often includes a week or more of witness preparation, regardless of if the Courthouse is nearby. Witnesses are unlikely to be driving in from home, testifying, and driving back . . . ."

Appx12. Again, if taken as true and applied to the transfer analysis, this factor becomes meaningless because *every* witness simply would be presumed to be away from her home, regardless of their residence or place of work. This Court should disregard the district court's attempt to marginalize the significant importance of the

several NDCA witnesses acknowledged to have specialized knowledge going to the heart of the issues in this case.

### b. Transfer Would Result in Actual Convenience for NDCA Witnesses

The record also is clear that these convenience gains *actually* will materialize if the case is transferred to NDCA. *In re Clarke*, 94 F.4th at 508. The district court criticized Qualcomm and Apple for allegedly "not present[ing] any strong indications for why each of these witnesses are likely to appear in this trial" and used that argument to "severely reduce the weight that many of the witnesses in Cupertino, or elsewhere in California, carry for consideration in this factor." Appx12. But the record and the district court order itself contradict that finding. The single asserted patent is about "*Calibration of I-Q Balance* in Transceivers." '313 Patent at Title. The district court's order explicitly recognizes that the *only* witnesses with knowledge of the "algorithms *relating to calibration of I-Q imbalance*" are in NDCA. Appx13. And the district court's order even acknowledges that "Defendants point to witnesses with a greater amount of knowledge related to the Accused Product's I-Q calibration." Appx10.

The record demonstrates the likelihood that the identified NDCA employees *actually* will appear at trial. All of the identified NDCA employees are vice presidents, managers, or senior staff at Qualcomm and Apple, and all have specialized knowledge relevant of the accused products. *See* Appx116-117, ¶ 11; *see*

Appx129-130, Appx131, ¶¶ 8–10, 13–14.  It is readily apparent from the record that these individuals' significance at Qualcomm and Apple, and their specialized knowledge and roles make it likely one or more of these employees will appear at trial. Regardless, *Clarke* does not require an explicit commitment from a party to bring a particular witness to trial. Instead, *Clarke* merely requires a showing that the "marginal gains" from those witnesses "will actually materialize in the transferee venue." 94 F.4th at 508. In *Clarke*, the movant-defendant failed to identify *any* relevant witness in the transferee venue, so it was unremarkable that the willing witness factor weighed against transfer as there were no "marginal gains" that could ever materialize in the transferee venue. *Id.* at 514. Here, by contrast, the district court abused its discretion by ignoring the overwhelming evidence that significant marginal gains of convenience for Apple and Qualcomm's willing witnesses would actually materialize in NDCA. Red Rock's identification of Qualcomm and Apple's employees in WDTX does not diminish this result—unlike Qualcomm and Apple, Red Rock failed to identify any WDTX employees with unique, relevant knowledge that does not exist in NDCA.

Finally, the district court abused its discretion when it discounted Qualcomm's witnesses in SDCA while not similarly discounting its reliance on allegedly relevant Qualcomm's witnesses Red Rock identified in NDTX. According to the district court, "the relevant witnesses for Qualcomm appear split between

NDCA and San Diego[, and] witnesses from San Diego would still be required to travel to NDCA for trial." Appx11. Yet the district court did not similarly discount the Qualcomm's witnesses that it identified in Richardson, TX—a city in NDTX and greater than 100 miles away from the Waco courthouse. *In re TikTok*, 85 F.4th at 359 ("[T]he court erred by comparing Texas with California when it should have been comparing [WDTX] with [NDCA].").

For those reasons, the district court abused its discretion in holding that the willing-witnesses factor is neutral. The factor strongly favors transfer. *See, e.g.*, *In re TikTok*, 85 F.4th at 361 ("The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas."); *In re Google LLC*, 58 F.4th at 1384 (factor weighed "firmly" in favor of transfer where Google identified eleven witnesses in NDCA even if three employees in WDTX had material information).

**B.    The district court incorrectly determined the relative ease of access to sources of proof to "slightly disfavor" transfer by ignoring record evidence and prioritizing information regarding unaccused silicon wafers**

The district court clearly erred in holding that the sources-of-proof factor is "slightly against transfer." Appx16. It favors transfer. In considering whether accessibility of evidence favors transfer, "[t]he question is relative ease of access, not absolute ease of access." *In re TikTok*, 85 F.4th at 358 (citation omitted). Therefore, "the location of document custodians and location where documents are

created and maintained" are both relevant. *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

The district court clearly erred in finding neither Apple nor Qualcomm had "specified what information is on their servers in NDCA compared to servers in other locations." Appx15-16. The district court's order contradicts its own findings: two pages earlier the district court concedes that "Defendants represent that . . . 5G and WiFi-6 software source code and financial information is stored in NDCA." Appx14.

The reality is that Qualcomm provided unrebutted evidence that relevant documents are generated and stored in NDCA. *See* Appx125, ¶ 21 ("documentation and other materials related to the algorithms and techniques relating to any calibration of I-Q imbalance for the Accused Qualcomm's 5G Products . . . . are stored on servers . . . at Qualcomm's California Bay Area Offices or San Diego Offices"), Appx1054-1056, Appx119, ¶ 23, Appx125, ¶ 21. At least some of these documents are located only in NDCA and are not accessible remotely from WDTX. *See, e.g.*, Appx125, ¶ 21. Qualcomm also identified that source code and financial information are stored on servers in NDCA, but not WDTX. Appx1054-1056 (databases for 5G software source code, WiFi-6 software source code, and 5G firmware source code in Santa Clara County). And Apple specifically identified relevant financial information that was *not* accessible to any employees in WDTX.

27

Appx422-423 at 29:12–30:10, Appx577-579 at 167:15–169:22, Appx628-629 at 213:5–22, Appx460-461 at 63:10–64:15, Appx581-582 at 170:20–171:20, Appx628-629 at 213:8–22. Red Rock did not dispute any of these statements.

The district court, instead, weighed "representations" in the form of unsupported conclusory statements by Red Rock and its "transfer expert" that SAS had relevant documents in Austin.  Relying on SAS documents is legally flawed and a clear factual error.  Legally, the SAS wafers are not the accused products, which are the proper focus of the analysis.  *See In re Samsung*, 2 F.4th at 1380.

Factually, the district court conceded that any "relevance of documents held by SAS are likely to be small compared to the relevance of documents held by Red Rock, Apple, or Qualcomm."  Appx13.  By itself, that factual concession contradicts the subsequent weighing.  The testimony of Red Rock's inventor and "transfer expert" also contradicts the assertion that SAS has relevant information. Red Rock's "transfer expert" first contended that SAS's relevant data focused on wafer fabrication.  Appx171-177, ¶¶ 30–43. However, after the named inventor of the '313 Patent testified that fabrication data was irrelevant, Red Rock changed its tune. *See* Appx898-900 at 77:6–78:21 (cleaned up) ("Q The '313 patent doesn't claim any method for fabrication of wafers, correct? A I think I can answer that one. It doesn't talk about fabrication at all."). Red Rock's "transfer expert" pivoted to speculating that SAS possessed calibration data relevant to the measurement of EVM.

Appx1217-1220, ¶¶ 6–13. That pivot, however, is wholly inconsistent with the reality that the wafers (not "dies" or "chips") leaving the SAS facility are incapable of even transmitting or receiving RF signals, much less having EVM tests run on those signals, as Red Rock's "expert" conceded in deposition. Appx1451-1452 at 116:13–118:9.

This lack of SAS information is consistent with Red Rock's previous '313 Patent lawsuit against Samsung. *See Red Rock Analytics, LLC v. Samsung Electronics Co. Ltd., et al.*, 2:17-cv-101-RSP (E.D. Tex.) ("Samsung"). There, Red Rock subpoenaed Qualcomm to obtain pre-calibration EVM test data, presumably because Samsung (including SAS) did not have this evidence. Appx1218-1219 ¶¶ 8–9. The record evidence is that Qualcomm, not SAS, performs the EVM testing. Appx374-375 at 137:8-138:5 (no testing at SECS2/SAS), Appx1037-1038 (listing no Texas test sites). By ignoring this unrebutted evidence on such a critical yet obvious technical point, coupled with Red Rock's contradictions and the prior *Samsung* litigation, the district court clearly erred in finding that SAS possesses any unique relevant evidence in this case.

On this record, the sources-of-proof factor weighs strongly in favor of transfer. *See In re TikTok*, 85 F.4th at 360. The electronic storage of documents does not make this factor irrelevant. *In re Juniper Networks*, 14 F.4th at 1321.

**C.    The district court improperly speculated on which third-party witnesses likely would come to trial in order to conclude that the "availability of compulsory process to secure attendance of witnesses" disfavors transfer**

The district court incorrectly found this factor disfavored transfer. Qualcomm and Apple identified at least two relevant third parties within the subpoena power of NDCA that are directly relevant to the claimed I-Q imbalance calibration. The first is a named inventor on multiple prior art patents and applications.  Appx100-101. The other is the first-named author cited by Red Rock in its amended complaint. *Id.* Both reside in NDCA. Both undoubtedly possess unique relevant evidence. *See In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (finding this factor neutral despite "identified prior-art witnesses and former employees knowledgeable about the [] accused product" in the transferee venue was legal error). Such knowledge is of heightened importance, when the witness is "specifically mentioned in the asserted patent." *In re Hulu*, 2021 WL 3278194, at *3.

The district court errored twofold in its analysis of this factor. First, the district court erred in discounting NDCA witnesses based on the assumption that they were unlikely to testify. Appx18. There is no legal impact to the district court's

characterization of these witnesses as "hand-picked by Defendants" who "conveniently live within the subpoena power of NDCA." Appx17-18. In any case, individuals named on the asserted patent and in Red Rock's *own* pleading are not "hand-picked by Defendants." *In re Hulu*, 2021 WL 3278194, at *3. The district court's analysis that it is "abundantly clear" that these witnesses are "unlikely to be utilized" at trial is contrary to precedent. Appx18. *See, e.g.*, *In re Hulu*, 2021 WL 3278194, at *3 (granting mandamus instructing district court to transfer case and explaining that the district court "erred by ignoring all of Hulu's proposed prior art witnesses for the reason that 'prior art witnesses are generally unlikely to testify at trial"). Under *Clarke* and *Hulu*, the record shows these witnesses with unique knowledge are *significant*, and their convenience would *actually* materialize in NDCA. *See In re Clarke*, 94 F.4th at 508.

Second, as previously discussed in Section B, *supra*, the Court clearly erred when it relied on a conclusion that "it is likely at least one witness from SAS will be called to testify regarding pre-calibration testing data." Appx18. Red Rock's expert admitted that the SAS wafers are not the accused products and are not functional. *See* Section B, *supra*. In discounting Qualcomm and Apple's third-party prior art witnesses while weighing more heavily SAS's potential testimony regarding unaccused and nonfunctional wafers, the district court applied plainly inconsistent standards to WDTX and NDCA witnesses, which was legal error.

On the record, there are *no* third-party witnesses in WDTX versus *at least two* relevant third-party witnesses in NDCA such that this factor supports transfer. *In re Hulu*, 2021 WL 3278194, at *4 ("[W]here, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

### D.  The district court ignored the overwhelming record evidence of local interest in the transferee forum

In a patent infringement suit, the local interest is strongest where the allegedly infringing features used in accused products were researched, designed, and developed *In re Samsung*, 2 F.4th at 1380 (where infringement accusations are "based on third-party applications running on LG's and Samsung's accused products" and "those third parties researched, designed, and developed most of those applications in Northern California," those "significant factors [] give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'"). Qualcomm and Apple's sworn declarations demonstrated that this design and development took place overwhelmingly in the transferee forum. Even the district court initially noted that "this factor leans slightly in favor of transfer." Appx24. Without explanation, the district court then incorrectly deemed this factor "neutral." Appx25.

The district court admits that "Apple's engineering groups responsible for

integrating Qualcomm's transceivers into Apple products" are in NDCA. Appx25. Properly applying the law, that conclusion as to the accused products was sufficient. *See In re Tik Tok*, 85 F.4th at 360. This is further buttressed by NDCA hosting the relevant Qualcomm development and design work for the accused WiFi-6 transceivers. *See* Appx96-100, Appx109, Appx1135-1148. The district court abused its discretion in finding that NDCA does not have a stronger local interest than WDTX in this case.

# CONCLUSION

"With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is 'clearly more convenient.' In these circumstances, the district court's no-transfer conclusion was a clear abuse of discretion." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014), quoting *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted). For the foregoing reasons, Qualcomm respectfully requests the Court issue a writ of mandamus vacating the district court's order denying the motion to transfer and directing the district court to transfer this case to NDCA.


Dated: March 19, 2025

/s/ Michael Hawes
Michael Hawes
michael.hawes@bakerbotts.com
BAKER BOTTS L.L.P.
910 Louisiana St
Houston, TX 77002
713-229-1750 (telephone)

Douglas Kubehl
doug.kubehl@bakerbotts.com
Nolan McQueen
nolan.mcqueen@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Ave., Suite 900
Dallas, TX 75201
(214) 661-4486 (telephone)

*Counsel for Qualcomm Incorporated*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally spaced typeface using Microsoft Word 365 in 14-point, Times New Roman font and includes 7,540 words.

Dated: March 19, 2025                              */s/ Michael Hawes*
                                                  Michael Hawes

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. I further certify that unless indicated otherwise, the foregoing was served via electronic mail upon the following:

Leslie V. Payne
lpayne@hpcllp.com
Michael F. Heim
mheim@hpcllp.com
Alden G. Harris
aharris@hpcllp.com
Kyle S. Ruvolo
kruvolo@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main St, Suite 3200
Houston, Texas 77002
Telephone: 713-221-2000
Facsimile: 713-221-2021

Claire A. Henry
claire@millerfairhenry.com
Miller, Fair, Henry PLLC
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: 903-757-6400
Facsimile: 903-757-2323

S. Calvin Capshaw
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
ederieux@capshawlaw.com
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.

Steven J. Wingard
Stephen L. Burbank
Robert P. Earle
SCOTT, DOUGLASS & MCCONICO,
L.L.P.
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300
swingard@scottdoug.com
sburbank@scottdoug.com
rearle@scottdoug.com

Mark D. Selwyn
Joseph F. Haag
WILMER CUTLER PICKERING HALE
 AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
mark.selwyn@wilmerhale.com
joseph.haag@wilmerhale.com

Joseph J. Mueller
Monica Grewal
Annaleigh E. Curtis
Madeleine C. Laupheimer
WILMER CUTLER PICKERING HALE
 AND DORR LLP

| | |
|---|---|
| Gladewater, TX 75647 | 60 State Street |
| Telephone: (903) 845-5770 | Boston, Massachusetts 02109 |
| | Tel: (617) 526-6000 |
| ATTORNEYS FOR RED ROCK | joseph.mueller@wilmerhale.com |
| ANALYTICS, LLC | monica.grewal@wilmerhale.com |
| | annaleigh.curtis@wilmerhale.com |
| | madeleine.laupheimer@wilmerhale.com |
| | |
| | ATTORNEYS FOR APPLE INC. |

I further certify that unless indicated otherwise, the foregoing was served via electronic mail upon the following:

Judge Alan D. Albright
U.S. District Court Western District of Texas
800 Franklin Avenue, Room 301
Waco, TX 76701
TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov

Dated: March 19, 2025                    /s/ Michael Hawes
                                          Michael Hawes