**25-123**

# United States Court of Appeals
# for the Federal Circuit

---

IN RE: QUALCOMM INCORPORATED,

*Petitioner.*

---

*On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:21-cv-00346-ADA, Honorable Alan D. Albright, Judge*

---

## NON-CONFIDENTIAL COMBINED OPPOSITION TO QUALCOMM'S PETITION FOR WRIT OF MANDAMUS AND RESPONSE TO APPLE'S MOTION FOR JOINDER ON BEHALF OF RED ROCK ANALYTICS, LLC

S. CALVIN CAPSHAW, III
CAPSHAW DERIEUX LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ccapshaw@capshawlaw.com

LESLIE V. PAYNE
MICHAEL F. HEIM
ALDEN G. HARRIS
HEIM, PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
(713) 221-2000
lpayne@hpcllp.com
mheim@hpcllp.com
aharris@hpcllp.com

*Counsel for Respondent Red Rock Analytics, LLC*

APRIL 10, 2025

 COUNSEL PRESS   (800) 4-APPEAL • (379870)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### (AMENDED) <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-123 |
| **Short Case Caption** | In re: Qualcomm Incorporated |
| **Filing Party/Entity** | Red Rock Analytics, LLC, Respondent |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/10/2025

Signature:  /s/ Leslie V. Payne

Name:  Leslie V. Payne

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Red Rock Analytics, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Leslie V. Payne, Heim, Payne and Chorush LLP | Michael F. Heim, Heim, Payne and Chorush LLP | Alden G. Harris, Heim, Payne and Chorush LLP |
| Kyle S. Ruvolo, Heim, Payne and Chorush LLP | T. John Ward, Jr., Law Office of T. John Ward, Jr., P.C. | Claire A. Henry, Miller, Fair, Henry PLLC |
| S. Calvin Capshaw, Capshaw Derieux LLP | Elizabeth L. Derieux, Capshaw Derieux LLP | Michael Dunbar, Heim, Payne and Chorush LLP |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES...............................................................iv

INTRODUCTION.........................................................................1

BACKGROUND ..........................................................................3

    I.    The Invention ..................................................................3

    II.   Infringement ..................................................................3

    III.  WDTX is the "Center of Gravity"...........................................4

LEGAL STANDARD ......................................................................5

ARGUMENT ..............................................................................6

    I.    Willing Witnesses..............................................................6

        A.   Apple..........................................................................7

            1.   Technical Witnesses........................................................7

                i.     5G Witnesses .........................................................7

                ii.   Wi-Fi Witnesses ......................................................10

            2.   Non-Technical Witnesses..................................................10

        B.   Qualcomm .....................................................................11

            1.   5G & Wi-Fi Technical Witnesses.......................................11

            2.   Non-Technical Witnesses..................................................14

C.    Credibility ....................................................15

D.    RRA ...........................................................20

E.    Qualcomm's Points of Error .........................20

    1.    "Specialized" or "Unique" Knowledge.................21

    2.    Austin Campuses ................................23

    3.    Witness Preparation ...........................24

    4.    No Convenience would "Actually Materialize" in
          NDCA ........................................25

F.    Apple's Motion...............................................26

II.   Sources of Proof ...............................................32

A.    Apple...........................................................32

B.    Qualcomm ..................................................35

C.    ▮▮TEAM▮▮ ..................................................39

D.    Apple's Motion...............................................43

III.  The Availability of Compulsory Process ..............45

A.    ▮▮TEAM▮▮ ..................................................45

B.    Mohindra and Zhang .................................46

C.    Apple's Motion...............................................49

IV.   Local Interest ........................................................................ 52

    A.   Qualcomm's Petition .................................................... 53

    B.   Apple's Motion.............................................................. 54

V.   Court Congestion..................................................................... 55

VI.   RRA's Expert Declarations .................................................... 57

    A.   Qualcomm's Petition .................................................... 57

    B.   Apple's Motion.............................................................. 59

VII.   RRA Does Not Oppose Apple's Request to Join the Petition 60

CONCLUSION ........................................................................... 62

## CONFIDENTIAL MATERIAL

The material redacted from this brief is subject to a protective order. The confidential information on pages ii, 1-2, 4-19, 21-22, 26, 30-33, 35, 38-45, 48-50, and 53-54, relates to Qualcomm's and/or Apple's confidential information about internal business operations, which has been designated as confidential.

# TABLE OF AUTHORITIES

**Cases**

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,

    922 F.3d 792 (Fed. Cir. 1990) ............................................................ 58

*City of New Orleans Emples. Ret. Sys. v. Hayward*,

    508 F. App'x 293 (5th Cir. 2013) ....................................................... 57

*Emerging Auto. LLC v. Kia Corp.*,

    2024 U.S. Dist. LEXIS 111535 (E.D. Tex. June 14, 2024) .................. 48

*Gulf Oil Corp. v. Gilbert*,

    330 U.S. 501 (1947) ............................................................................ 57

*In re Apple Inc.*,

    2024 U.S. App. LEXIS 21081 (Fed. Cir. Aug. 21, 2024) ................. 5, 19

*In re Clarke*,

    94 F.4th 502 (5th Cir. 2024) ...................................................... 6, 25, 47

*In re Dish Network L.L.C.*,

    2021 U.S. App. LEXIS 31759 (Fed. Cir. Oct. 21, 2021) ...................... 48

*In re Google LLC*,

    2021 U.S. App. LEXIS 29137 (Fed. Cir. Sep. 27, 2021) ................. 23, 27

*In re Google LLC,*

2021 U.S. App. LEXIS 33789 (Fed. Cir. Nov. 15, 2021) ..................... 33

*In re HP Inc.,*

826 F. App'x 899 (Fed. Cir. 2020) ....................................................... 34

*In re Hulu, LLC,*

2021 U.S. App. LEXIS 22723 (Fed. Cir. Aug. 2, 2021) ...................... 47

*In re Juniper Networks, Inc.,*

14 F.4th 1313 (Fed. Cir. 2021) ........................................................... 50

*In re Meta Platforms, Inc.,*

2023 U.S. App. LEXIS 28709 (Fed. Cir. Oct. 30, 2023) ..................... 56

*In re Micro Inc.,*

2022 U.S. App. LEXIS 12639 (Fed. Cir. May 11, 2022) ..................... 28

*In re Netflix, Inc.,*

2022 U.S. App. LEXIS 1390 (Fed. Cir. Jan. 19, 2022) ....................... 50

*In re Overhead Door Corp.,*

2021 U.S. App. LEXIS 35980 (Fed. Cir. Dec. 7, 2021) ....................... 26

*In re Planned Parenthood,*

52 F.4th 625 (5th Cir. 2022) ..................................................... 6, 35, 56

*In re Rollings,*

    451 F. App'x 340 (5th Cir. 2011) .................................................... 5, 19

*In re Samsung Elecs. Co.,*

    2 F.4th 1371 (Fed. Cir. 2021) ....................................................... 49, 53

*In re TikTok, Inc.,*

    85 F.4th 352 (5th Cir. 2023) ..................................................... 5, 23, 52

*In re Volkswagen,*

    545 F.3d 304 (5th Cir. 2008) ........................................................ 5, 49

*In re W. Dig. Techs., Inc.,*

    2023 U.S. App. LEXIS 5250 (Fed. Cir. Mar. 6, 2023) ......................... 52

*In re W. Dig. Techs., Inc.,*

    847 F. App'x 925 (Fed. Cir. 2021) ........................................................ 52

*Kajeet, Inc. v. Trend Micro, Inc.,*

    2022 U.S. Dist. LEXIS 6603 (W.D. Tex. Jan. 12, 2022) ...................... 28

*Kuster v. W. Dig. Techs., Inc.,*

    2021 U.S. Dist. LEXIS 25256 (W.D. Tex. Feb. 9, 2021) ...................... 52

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*

    869 F.3d 1372 (Fed. Cir. 2017) ............................................................ 9

*Palm Valley Health Car, Inc. v. Azar*,

   947 F.3d 321 (5th Cir. 2020) .................................................................58

*Proxense LLC v. Apple Inc.*,

   No. 6:24-cv-00143-ADA, Dkt. 60 (W.D. Tex. Jan. 8, 2025) .................27

*Scramoge Tech. Ltd. v. Apple Inc.*,

   2022 U.S. Dist. LEXIS 93597 (W.D. Tex. May 25, 2022)....................17

*U.S. v. Planned Parenthood*,

   2022 U.S. Dist. LEXIS 239972 (N.D. Tex. Sep. 20, 2022)...................56

*Viasat, Inc. v. W. Digit. Techs., Inc.*,

   2022 U.S. Dist. LEXIS 227509 (W.D. Tex. Dec. 12, 2022).................51

*Waymark Corp. v. Porta Sys. Corp.*,

   245 F.3d 1364 (Fed. Cir. 2001) .............................................................9

*Wilson v. Martin*,

   789 F. App'x 861 (Fed. Cir. 2019) .......................................................47

### Rules

Fed. R. Evid. 702 ...................................................................................58

CONFIDENTIAL MATERIAL REDACTED

## INTRODUCTION

Under Fifth Circuit law, the District Court found three factors disfavor transfer and the rest are neutral. This was not a close call. Red Rock Analytics ("RRA") submitted robust evidence (almost 100 exhibits, ten depositions, and over 100 pages of declarations) proving the center of gravity is WDTX. Petitioners cannot show error, much less ***clear*** abuse of discretion.

***Willing Witnesses***: The District Court correctly found this factor is neutral: "there are members of both Apple's and Qualcomm's teams with relevant knowledge in both proposed venues." Appx0013. Petitioners have ▮ relevant teams in ▮—with **NUMBER** of members—responsible for designing accused products, marketing them, and maintaining financial records. RRA identified twenty-eight relevant witnesses in Texas. Petitioners cannot overcome this evidence, so they resort to sideshow arguments about Austin workplaces "mitigating" inconvenience.

***Compulsory Process***: The District Court correctly held "this factor slightly disfavors transfer." Appx0018. RRA showed third-party ▮ ▮ ("▮ is Qualcomm's largest US

manufacturer of accused circuitry. "[I]t is likely at least one witness from ███ will be called to testify regarding pre-calibration testing data" and accused features. Appx0018-19. ███ witnesses in ███ were weighed against Petitioners' *one* prior art witness and *one* non-prior-art author in NDCA who are "unlikely" to testify. Petitioners complain about this weighing, which was within the court's discretion.

***Sources of Proof***: The District Court correctly found "the greater access to ███ technical and testing documents slightly disfavors transfer." Appx0016. The record shows Apple, Qualcomm, and ███ create, store, and access voluminous evidence in ███

***Local Interest***: The Court conservatively held this factor neutral. Appx0025. RRA proved the accused 5G chips are developed in ███ Neither Petitioner identified any 5G-related employees in NDCA. Qualcomm identified four alleged Wi-Fi employees in NDCA, but RRA showed Qualcomm's ███ teams also develop Wi-Fi chips.

***Court Congestion***: The District Court recognized "according to Fifth Circuit caselaw," this factor "weighs against transfer." Appx0021-22. But the court observed "Federal Circuit precedent [requiring "product competition"] appears to contradict Fifth Circuit rulings" and held this

factor neutral. Appx0021. Under binding Fifth Circuit law, this factor disfavors transfer.

## BACKGROUND

### I. The Invention

Dr. Cafarella, the inventor of Pat. No. 7,346,313, founded RRA. The '313 Patent teaches calibrating gain imbalances in wireless transceivers. Transceivers have "transmit" and "receive" hardware (*i.e.* circuitry) that imparts "gain" on I-Q signals. When I-Q gains are imbalanced, the transceiver sends and receives signals with incorrect I-Q values, causing errors. The '313 Patent calibrates I-Q gain imbalances by connecting the transmit and receive hardware via a signal path, using hardware controlled by software to send a "calibration RF signal" through that path, and using hardware and software to form an "observable indicator" to determine I-Q gain imbalance.

### II. Infringement

RRA asserts Petitioners infringe, *e.g.*, Claim 7. The claimed I-Q calibration is performed by ***hardware*** and ***software*** features of accused 5G and Wi-Fi chips. Appx1571 (¶9). RRA accuses 5G chips developed by Apple and 5G and Wi-Fi 6 chips developed by Qualcomm. Appx3552-53, Appx3560.

3

CONFIDENTIAL MATERIAL REDACTED

### III.   WDTX is the "Center of Gravity"

Apple, Qualcomm, and [TEAM] have [NUMBER] employees in [LOCATION] RRA has accused Petitioners' flagship products of infringement. Yet Petitioners ask this Court to accept an absurdity—not even one Texas employee is relevant. Mot.14 ("the district court…identified no basis for concluding that *any* Texas-based witnesses have relevant knowledge").[1] This absurdity results from Petitioners' efforts to gerrymander the definition of "relevance" to only include software "algorithms." Petitioners' declarants used this unduly narrow definition to omit relevant witnesses and avoid investigating Texas. Section I.C., *infra*.

Had Petitioners' declarants done what was required, they would have conceded: (1) Apple has "a [TEAM] Team in [LOCATION] who designed a new Apple 5G chip that is part of the infringing products" (Appx0009); (2) "Apple's teams with information relevant to damages, such as Apple's [TEAM] Team; [TEAM] Team; or [TEAM] Team, reside in [LOCATION] (Appx0009); (3) Qualcomm has a [TEAM]" team in [LOCATION] (Appx0009-

---

[1] In this brief, all emphasis is added unless otherwise noted. Deposition quotes omit objections. Case quotes omit internal citations.

CONFIDENTIAL MATERIAL REDACTED

10); (4) Qualcomm has a **TEAM**

**TEAM** team[]" in **LOCATION** about 110 miles from Waco (Appx0009-10);

and (5) **TEAM** manufactures accused circuitry in **LOCATION** (Appx0015).

The District Court was not required to accept Petitioners' gerrymandered view of relevance. *In re Apple Inc.*, 2024 U.S. App. LEXIS 21081, at *3 (Fed. Cir. Aug. 21, 2024) (transfer denial affirmed where movant "ignored components which [plaintiff] contends are infringing"). Nor was the court required to believe Petitioners' uninformed declarants over RRA's evidence. *In re Rollings*, 451 F. App'x 340, 349 (5th Cir. 2011) ("court's finding…based on its decision to credit the testimony of one witness over that of another…if not internally inconsistent, can virtually never be clear error.").

## LEGAL STANDARD

On a §1404(a) review, this Court applies regional circuit law. *In re TikTok, Inc.*, 85 F.4th 352, 367 (5th Cir. 2023).

The district court has "broad discretion in deciding whether to order a transfer." *In re Volkswagen*, 545 F.3d 304, 311 (5th Cir. 2008). "[T]o establish 'good cause,' a movant must show that (1) the marginal gain in convenience will be *significant,* and (2) that its evidence makes it plainly

5

obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis in original). A "mere preponderance of the evidence is insufficient." *Id.* n.3.

Mandamus "requires more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion.…[W]e review only for ***clear*** abuses of discretion that produce patently erroneous results." *In re Planned Parenthood*, 52 F.4th 625, 629 (5th Cir. 2022).

## ARGUMENT

### I. Willing Witnesses

The District Court found this factor neutral. "As is clear from the briefing by both RRA and Defendants, there are members of both Apple's and Qualcomm's teams with relevant knowledge in both proposed venues. The Court finds that both venues contain witnesses with specialized knowledge not found in the other venue." Appx0013.

These findings are well-supported. At least twenty-five of Petitioners' witnesses are in WDTX and three are in NDTX. Petitioners have NUMBER relevant LOCATION teams—with NUMBER of members—responsible for

designing accused products, marketing them, and maintaining financial records. Appx0142, Appx1673, Appx1586-89, Appx1599-604.

Petitioners purported to identify sixteen witnesses in NDCA, but later admitted Apple's "testing and integration" employees have no relevant knowledge. Even if the District Court credited all sixteen, there are still far more in WDTX.

### A.   Apple

#### 1. Technical Witnesses

##### i. 5G Witnesses

The District Court discussed Apple's "**TEAM** Team in **LOCATION** who designed a new Apple 5G chip that is part of the infringing products." Appx0009.

RRA showed this **TEAM** **LOCATION** team designs Apple's accused 5G chip. Appx1586-89, Appx2244-45 (13:15-17, 14:14-16), Appx2075-76 (99:2-19). RRA also identified **NUMBER** specific members of this **LOCATION** team and showed they have knowledge of infringement and damages issues including: I-Q calibration, the effect of I-Q gain imbalance on EVM, the claimed "signal path for injecting," the claimed "direct conversion subsystem," and the claimed "processor." Appx1589-99 *citing* Appx2235-67, Appx3166-67, Appx3178, Appx3199-201, Appx3223-24, Appx3231-

3232, Appx3868, Appx3318-41, Appx3352-68, Appx3371-3503, Appx3505-32.

For example, **TEAM** Team member Dr. **NAME** wrote his Ph.D. thesis on I-Q calibration, showing calibration improves EVM to 5G levels. Appx1589-92, Appx3370-503. EVM is an error measurement that RRA used to calculate damages in the *Samsung* case. Appx0166-67. EVM "provides a way to numerically quantify benefits [of] practicing the '313 Patent." Appx1575 (¶17). The 5G and Wi-Fi 6 standards specify EVM requirements. Appx1574 (¶15). Dr. **NAME** knowledge of how I-Q calibration improves EVM is relevant to damages and infringement. RRA *will* call Dr. **NAME** at trial. Appx3901.

Qualcomm argues Apple's "teams responsible for testing and integration of the Accused ***Qualcomm's 5G chips*** into the Accused Apple Products are all in **LOCATION** **LOCATION**, and **LOCATION** Pet.18-19 (identifying two Apple employees). But Apple conceded its employees do not know how Qualcomm's 5G chips work: "all of the relevant information associated with how Qualcomm's 5G transceiver works…would come from Qualcomm." Appx2189 (200:7-11). "I am not aware of ***anybody*** at

CONFIDENTIAL MATERIAL REDACTED

Apple that knows how exactly the I-Q gain imbalance calibration works on Qualcomm's 5G transceivers." Appx2011 (42:11-13).

Given their lack of knowledge, the two Apple employees "responsible for testing and integration" of Qualcomm's 5G chips are not relevant. But even if they were, they are far outnumbered by Apple's 5G witnesses in LOCATION

Qualcomm claims it "is undisputed that Apple's 5G chip is not accused in this case." Pet.20. This *was* disputed and the court resolved the dispute in RRA's favor. RRA argued its "contentions accuse all Apple products 'that include a 5G wireless transceiver'" including Apple's 5G chip.[2] Appx0151, Appx3558 ("The accused Apple Infringing Products ... include a 5G wireless transceiver"), Appx0054 (complaint defining "Apple Infringing Products" as "products...that include 5G wireless transceivers"). The court's Order references the "new Apple 5G chip that is part of the infringing products." Appx0009. But even if Apple's 5G chip

---

[2] During the lower court briefing, Apple had not yet commercially released its 5G chip, but Apple infringed by "making" and "using" prototypes. Appx0179; *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017) ("Limited internal manufacture and use can also infringe."); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) ("testing is a use"). Apple subsequently released its 5G chip in the iPhone 16E.

was not accused, Apple's Hardware witnesses would still be relevant to damages—they understand how I-Q calibration improves EVM. Appx0180.

Qualcomm argues RRA has only shown Apple's ██████ technical witnesses have "*general* knowledge of I-Q signals." Pet.19-20. But RRA proved these witnesses have specialized knowledge about relevant features of Apple's 5G chip. Petitioners have not identified *anyone* in NDCA knowledgeable about Apple's 5G chip.

### ii.  Wi-Fi Witnesses

RRA's allegations against Apple do not include Wi-Fi. Apple has no Wi-Fi witnesses.

### 2. Non-Technical Witnesses

The District Court discussed "Apple's teams with information relevant to damages, such as Apple's ████ ███ Team; ████ ████ Team; or ████ ███ Team, resid[ing] in ████████ Appx0009.

These massive ████████ teams are relevant. Appx1642-46. The ████ Team is responsible for the ████ database, Apple's financial "source of truth." Appx1641-44. The ████ and ████ Teams are responsible for accused product sales and relevant ████ sales data. Appx1644-46.

RRA identified fourteen Apple employees in WDTX relevant to damages, including accused product revenues and marketing, IP licensing, customer demand, and sales forecasting. Appx1655-67 *citing* Appx2347-57, Appx3161-64, Appx3168-76, Appx3179-97, Appx3202-21, Appx3225-29. An Apple [LOCATION] employee is responsible for [SYSTEM] access credentials. Appx2360.

Without identifying any Apple damages witnesses in NDCA, Qualcomm only argues that Apple's non-technical WDTX witnesses "lack any specialized knowledge about financial data." Pet.20. But RRA showed each of the fourteen employees and [NUMBER] teams have relevant knowledge. Appx1641-46, Appx1655-67.

## B.    Qualcomm

### 1. 5G & Wi-Fi Technical Witnesses

The District Court discussed "technical witnesses in WDTX" and "Richardson, TX," including the "[TEAM] and [TEAM] teams." Appx0009-10.

RRA proved that the [TEAM] Qualcomm [TEAM] Team in [LOCATION] and [TEAM] Team in [LOCATION] are relevant. Appx1599-604.

RRA's complaint and contentions accuse the DSP on Qualcomm's chips. Appx3719-23. The DSP performs claimed functions such as opening and closing the "signal path," generating the "calibration RF signal," measuring and forming the "observable indicator," and determining I-Q "gain settings." Appx1600-01. When Qualcomm surveyed Texas personnel asking whether they are "responsible for the design, implementation, testing, sales/marketing of Qualcomm's IQ imbalance correction," ▉NUMBER ▉LOCATION ▉TEAM team members answered "yes." Appx3146-47 (¶13).

Qualcomm claims its respondents "misread the survey" and claims the ▉TEAM team "does not design or develop any part of a 5G or Wi-Fi 6 transceiver." Pet.19; Appx1214-15 (¶14). But Qualcomm's declarant contradicted this by admitting the ▉TEAM team works on Qualcomm's QDSP6 DSP, which is the DSP in multiple 5G and Wi-Fi accused products. Appx1211, Appx1616. The District Court credited RRA's evidence about the relevance of the ▉LOCATION ▉TEAM team and its two members.

RRA also showed the ▉LOCATION ▉TEAM team is relevant. Qualcomm admits this team works on "the design of RF components" for the accused

5G and Wi-Fi products. Appx3148 (¶18). Qualcomm did not investigate what hardware is designed by the ███ ███ team. Appx1935-38 (125:9-127:20). The RFIC is part of the accused products and includes multiple accused features. Appx1577-79. RRA identified four ███ team members in ███ about 100 miles from Waco, and described their knowledge of infringing hardware. Appx0196-207. RRA also identified Mr. ███ near ███ on the ███ team, who has written I-Q calibration code. Appx2430 (42:25-43:8).

Qualcomm argues the ███ team is irrelevant because their "LinkedIn profiles mention none of those [accused] technologies." Pet.6. But RRA's cited evidence also includes deposition transcripts, Qualcomm's ███ source code, and publications by ███ team members in ███ Appx0167-71, Appx0191-207 *citing* Appx3832, Appx3854 (org chart); Appx2561-62, Appx1820-22, Appx1935-38, Appx2390-439 (deposition testimony); Appx3348-50, Appx3286-301, Appx3353-63 (papers and patents); Appx3146-60 (Qualcomm declarations). The court was entitled to credit RRA's evidence.

Qualcomm argues it has "four NDCA employees responsible for the Accused Wi-Fi 6 products." Pet.18. Assuming this is true, RRA identified

13

more relevant Qualcomm technical employees in ██LOCATION██—██NUMBER██ ██TEAM██ team members, ██NUMBER██ ██TEAM██ team members, and one ██TEAM██ team member. Moreover, Qualcomm's ██LOCATION██ employees and teams are knowledgeable about both 5G *and* Wi-Fi chip hardware.

Qualcomm claims it identified "two members of RFIC teams in NDCA." Pet.6. Qualcomm cites a spreadsheet that lists two people in NDCA, but it does not say what these people do. Qualcomm also claims "hardware, RFA connectivity design, and RF Systems teams [are] located in NDCA." Pet.7. This too is misleading because the cited declaration says these NDCA teams are relevant to "Wi-Fi 6 Products," not 5G products. Qualcomm has never identified any specific person with knowledge of accused 5G chips in NDCA and only identified three 5G people in SDCA. Appx0121-23. RRA identified three in WDTX and four in NDTX with relevant 5G and Wi-Fi knowledge.

## 2. Non-Technical Witnesses

The District Court's Order references "several potential Qualcomm damages witnesses in or near WDTX." Appx0010.

RRA proved at least two such Qualcomm witnesses are relevant. Appx1667-71. Qualcomm admitted: "██NAME██ and [] ██NAME██…are involved

14

with sales and marketing of Qualcomm products including 5G and WiFi-6 transceiver products." Appx3148-49.

Qualcomm's Petition ignores ███NAME███ and ███NAME███ In the District Court, Qualcomm's only argument was "they have no knowledge of the accused I-Q gain calibration technology." Appx1136. But these are damages witnesses, so they need not have technical knowledge.

## C. Credibility

RRA identified relevant Apple and Qualcomm WDTX teams and twenty-five willing witnesses in WDTX (plus three in NDTX). Yet Qualcomm insists that "***none*** of Qualcomm or Apple's Texas employees possess ***unique*** information relating to the relevant features of ***any*** Accused Products." Pet.6.

Petitioners use multiple layers of gerrymandering to take this absurd position. First, Petitioners crafted a gerrymandered definition of relevance limited to ***software*** "***algorithms and techniques***" for I-Q calibration. Appx0115-17, Appx0122-25; Pet.3-4,27. Petitioners use this definition to exclude Texas witnesses with knowledge of accused ***hardware***, such as the Qualcomm ██TEAM██ ██TEAM██ and Apple ███TEAM███ teams. Petitioners also use this gerrymandered definition to exclude

relevant non-technical witnesses, including Apple's ██LOCATIONTEAM██ ██TEAM██ and ██TEAM██ teams.

Second, Petitioners gerrymandered out Apple's 5G chip by claiming it is not accused, as discussed above. Pet.6. But the Apple 5G chip is accused and developed in WDTX.

Third, Petitioners limited their investigation to "the ***smallest team*** responsible for…the ***algorithms and techniques*** related to calibration of I-Q imbalance." Appx2814, Appx2836 ("***the smallest group unit***").

Fourth, Petitioners also liberally deploy the qualifier "unique" to omit relevant Texas witnesses whom they unilaterally deem to have knowledge that overlaps with NDCA witnesses. Pet.6 ("none of Qualcomm or Apple's Texas employees possess ***unique*** information"); Pet., *passim* (using "unique" nineteen times in brief); Appx0130-131 ("I am not aware of any Apple employee who has ***unique*** information relevant to this case" in WDTX).

Consistent with this gerrymandered approach, Petitioners selectively fed their declarants information about California employees, while ensuring those declarants did not meaningfully investigate Texas employees.

16

Apple's declarant was Mark Rollins. The District Court previously held "Mr. Rollins frequently and repeatedly submitted unreliable and misleading declarations to this Court." *Scramoge Tech. Ltd. v. Apple Inc.*, 2022 U.S. Dist. LEXIS 93597, *6 (W.D. Tex. May 25, 2022). "Mr. Rollins routinely offers information about topics a financial manager would typically not know.… [T]he scope, content, and frequency of declarations submitted by Mr. Rollins shows that they are attorney-crafted documents full of hearsay with little to no evidentiary value." *Id.* at *10-14.

Apple used the same playbook here. Though Rollins has only a "very layman's understanding" of the accused technology (Appx0430), his declaration purports to identify Apple technical witnesses in California who work on "testing or integrating the Qualcomm 5G transceivers." Appx0129. Yet when questioned, he admitted these people are not relevant: ***no one*** at Apple understands how Qualcomm's transceivers work, and "all of the relevant information associated with how Qualcomm's 5G transceiver works…would come from Qualcomm." Appx2011 (42:11-13), Appx2189 (200:7-11).

Rollins also failed to investigate Apple's Texas operations, including its TEAM Team. Appx2074-75 (98:17-20) ("I didn't

CONFIDENTIAL MATERIAL REDACTED

specifically inquire how many engineers in the Austin, Texas, work on 5G transceivers"), Appx2068-69 (93:1-11) ("I am not specifically aware if there are engineers within the Austin campus that are aware of the functionality of I-Q calibration"), Appx2064 (89:9-14) ("Q. Would there be engineers…in Austin who are knowledgeable about the benefits of I-Q calibration? A. I am not aware either way."). He also pled ignorance about Apple's non-technical Texas employees. For example, he did not "investigate whether there was any other person or team at Apple that has the same level of access to the **SYSTEM** system" as his team. Appx2036-37 (64:16-65:1).

Qualcomm's declarants took the same approach, cherry-picking California witnesses while failing to investigate Texas. Mr. Simon, Qualcomm's Wi-Fi declarant, admitted he has no knowledge of Qualcomm's I-Q calibration. Appx2568-69 (40:24-41:5), Appx2575-76 (46:18-47:17). Simon's "investigation" was limited to "algorithms and techniques," improperly excluding hardware. Appx3145 (¶¶6-7). His "investigation" consisted of receiving hearsay from two witnesses. Appx2590-91 (60:2-61:13). Simon admitted the **TEAM** Team in **LOCATION** *does* design hardware used in accused products (Appx2561-62 (34:22-35:2)),

but said he did not investigate other relevant teams and whether they had ███████ members. Appx2537-38 (13:2-14:6), Appx2541-42 (16:19-17:2), Appx2553-55 (27:12-21, 28:16-29:5).

Likewise, Qualcomm's 5G declarant, Mr. Vijayan, excluded Qualcomm's Texas hardware operations from his investigation. Appx1934 (124:2-9) ("Does anyone in the Qualcomm Austin office do work [on] the accused Qualcomm 5G products? A. [I] would not know that because that was not something I was trying to … find out."), Appx1822 (24:21-25) ("Q.…did you try to find out what *hardware* is used for I-Q gain imbalance calibration? A. No."), Appx1823 (25:3-7) ("Q. Did you try to find out everyone who works on that *hardware*? A. No."). Nor did he investigate what hardware is designed by the ███████ ████ team. Appx1935-38 (125:9-127:20).

On this record, the District Court was "uniquely well-positioned" to determine the "weight and significance" to afford Petitioners' declarants. *Apple*, 2024 U.S. App. LEXIS 21081, at *4. Petitioners often cite their declarations like gospel the court was required to believe, but that is not the law. The District Court's discretion to weigh witness credibility is owed great deference. *Rollings*, 451 F. App'x at 349 (court's credibility

weighing "if not internally inconsistent, can virtually never be clear error").

### D.    RRA

Petitioners do not challenge the District Court's finding that WDTX is "marginally" more convenient for RRA's witnesses. Appx0011.

### E.    Qualcomm's Points of Error

Qualcomm cannot challenge the District Court's central fact findings: (1) "Both Red Rock and the Defendants have provided numerous potential witnesses for consideration, many with varying degrees of relevance"; and (2) "As is clear from the briefing by both Red Rock and Defendants, there are members of both Apple's and Qualcomm's teams with relevant knowledge in both proposed venues." Appx0010, Appx0013. These findings led to a well-supported conclusion: "Ultimately, with the balance being nearly equal, and the uncertainty surrounding which witnesses are likely to actually appear at trial, the Court has determined that this factor is neutral." Appx0013.

Because Qualcomm cannot attack this central finding, it nitpicks non-issues, like whether Petitioners' Austin offices "mitigate" the inconvenience for California witnesses and whether one district has more witnesses with "specialized" knowledge. Pet.17-26.

20

CONFIDENTIAL MATERIAL REDACTED

### 1. "Specialized" or "Unique" Knowledge

Qualcomm uses the word "specialized" or "unique" 16 times on pages 17-26. But the question is whether the witness is relevant, not whether the witness is "unique" or "specialized." No Fifth or Federal Circuit case holds that a witness must have "unique" or "specialized" knowledge to count.

Undeterred, Qualcomm falsely claims "[a]ll of the identified NDCA employees…have specialized knowledge relevant of the accused products." Pet.24. First, none of Apple's NDCA employees are knowledgeable about how **Qualcomm's 5G chips** work. Appx2011 (42:11-13). And the only witnesses knowledgeable about **Apple's 5G chips** are on the Apple ▮TEAM▮ Team in ▮LOCATION▮—these ▮LOCATION▮ witnesses are "unique" in Qualcomm's parlance. Appx0178-91 (¶¶47-82).

Second, Qualcomm has identified no specific NDCA employees knowledgeable about **Qualcomm 5G chips**, whereas RRA has identified three in WDTX and four in NDTX. Appx0121-23, Appx0191-210. The witnesses with "unique" knowledge about Apple and Qualcomm **5G chips** are in WDTX, not NDCA.

21

The only possibly relevant technical witnesses in NDCA are four Qualcomm employees who allegedly know about Qualcomm **Wi-Fi chips**. Pet.18. But RRA proved seven Texas Qualcomm witnesses also know about these chips, meaning Qualcomm's alleged NDCA witnesses do not have "unique" knowledge. Appx0191-210, Appx1616.

Qualcomm argues "Red Rock failed to identify any WDTX employees with unique, relevant knowledge that does not exist in NDCA." Pet.25. But as discussed above, Apple and Qualcomm witnesses and teams in ▮LOCATION▮ have "unique" knowledge of Apple and Qualcomm 5G chips. This supports the court's finding that "both venues contain witnesses with specialized knowledge not found in the other venue." Appx0013.

Qualcomm also cites the District Court's statement that "Defendants point to witnesses with a greater amount of knowledge related to the Accused Product's I-Q calibration." Pet.17; Appx0010. But this statement is about software (not hardware) in Qualcomm's Wi-Fi chips. Appx0013. Qualcomm misleads by adding bracketed language in this quote "[for both Apple and Qualcomm]," when the quote is only referring to Qualcomm Wi-Fi witnesses. Pet.17.

## 2. Austin Campuses

The District Court's correct finding that Petitioners' Austin campuses mitigate inconvenience did not affect the neutral outcome of this factor—that outcome was dictated by numerous witnesses in both districts. Even if the court's statements regarding "mitigation" constitute error (they do not), it would be harmless because it did not change the outcome.

The District Court recognized Petitioners' California witnesses "would clearly be better served with the trial being held in NDCA," giving weight to their location. Appx0011. The court also correctly observed "inconvenience to witnesses increases in direct relationship to the additional distance they must travel." Appx0006. The court further noted Petitioners' massive Austin campuses "could help to mitigate interruptions to their workflow and, as a result, would reduce the cost of attendance for these witnesses." Appx0011.

Qualcomm argues the "Court's reasoning has no support in law." Pet.21. But the District Court cited Petitioners' authority. Appx0011 *citing In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *11-12 (Fed. Cir. Sep. 27, 2021) (referencing the costs of witnesses being "away from their homes and **work**"). Qualcomm's *TikTok* case says courts consider

23

"personal costs associated with being away from ***work***, family, and community." 85 F.4th at 361. Courts are allowed to consider whether "costs associated with being away from work" can be "mitigated."

Qualcomm argues there is no evidence "NDCA witnesses are able to meaningfully work at the Texas campuses." Pet.22. The record was replete with evidence about Petitioners' Austin campuses. Appx1684-85. If Petitioners claim their California employees cannot work there, it was their burden to show this (they did not).

Qualcomm argues the District Court's reasoning renders this factor "meaningless" because usually the defendant has an office in the transferor district under §1400. Pet.22-23. But the District Court merely stated Petitioners' Austin campuses "could ***help to mitigate*** interruptions," while acknowledging NDCA would be more convenient for California witnesses. The court also did not hold its reasoning applies to smaller offices. The court rendered this factor ***meaningful*** by considering the reality of Petitioners' significant presence in Austin.

### 3. Witness Preparation

Qualcomm criticizes the District Court for relying on "its own experience" to conclude "trials often include[] a week or more of witness

preparation, regardless of if the Courthouse is nearby." Pet.23. Qualcomm again argues this renders the factor "meaningless," but the court simply acknowledged reality: "there will be some baseline cost to any witness that may be called to trial" which is "somewhat mitigated by a trial closer to home." Appx0012.

### 4. No Convenience would "Actually Materialize" in NDCA

The District Court found "Defendants have not presented any strong indications for why each of these [California] witnesses are likely to appear in this trial." Appx0012. Qualcomm claims error, but it simply disagrees with the court's finding that there are numerous relevant WDTX witnesses. It was appropriate for the court to recognize the "uncertainty" surrounding the relevance of California witnesses. Appx0013.

Finally, Qualcomm claims the court "discounted Qualcomm's witnesses in SDCA while not similarly discounting…Qualcomm's [NDTX] witnesses." Pet.25. Richardson is 110 miles from Waco, whereas San Diego is 450 miles from San Francisco. Inconvenience scales with distance. *Clarke*, 94 F.4th at 514. The District Court properly weighed these witnesses.

25

### F. Apple's Motion

Apple's Motion never identifies allegedly relevant Apple employees in NDCA, nor does Apple's Motion meaningfully dispute the relevance of Apple's employees and teams RRA identified in ▮LOCATION▮ The Court correctly held this factor is neutral because "there are members of both Apple's and Qualcomm's teams with relevant knowledge in both proposed venues." Appx0013. Apple shows no error in this finding, let alone "clear error." *See In re Overhead Door Corp.*, 2021 U.S. App. LEXIS 35980, at *5 (Fed. Cir. Dec. 7, 2021) (nonprecedential) ("a district court acts reasonably when it refuses to weigh the willing witness factor in favor of transfer if unable to determine from the movant's presentation of the factor that there are more potential witnesses in the transferee venue than the plaintiff's chosen forum").

Apple concedes "Apple's and Qualcomm's Austin facilities might diminish some inconvenience to California-based employee witnesses" but argues this "does not eliminate the inconvenience." Mot.10. As discussed above, the District Court ***did not*** hold that Apple and Qualcomm's Austin facilities "eliminate" inconvenience. The District Court held that NDCA witnesses "would clearly be better served with the

trial being held in NDCA" but that Petitioners' WDTX campuses "could *help to mitigate* interruptions to their workflow and, as a result, would *reduce* the cost of attendance for these witnesses." Appx0011. In other words, the District Court agreed with Apple that Petitioners' Austin campuses *diminish* some inconvenience to their California witnesses without *eliminating* such inconvenience. This holding also agrees with the *Google* case Apple cites as authority. *Google*, 2021 U.S. App. LEXIS 29137, at *10 ("employer's cooperation…may diminish certain aspects of inconvenience to the employee witness").

Apple notes this is "not the first time" the District Court has found that Apple's massive Austin campus can mitigate some witness inconvenience, citing *Proxense*. In that case, like this one, the court found Apple has "a campus in Austin which could help to mitigate interruptions to their workflow and reduce the cost of attendance for these witnesses." *Proxense LLC v. Apple Inc.*, No. 6:24-cv-00143-ADA, Dkt. 60 at 6 (W.D. Tex. Jan. 8, 2025). Even though the *Proxense* order denying transfer was entered over a month before the order in this case, Apple never sought mandamus review in *Proxense*. This suggests Apple does not actually

believe the District Court's finding is error, or at least not error significant enough to warrant mandamus review.

Likewise, in *Kajeet*, the court found "San Jose employees traveling to the WDTX for trial could similarly work out of the Austin office, thus lessening the burden of being away from work." *Kajeet, Inc. v. Trend Micro, Inc.*, 2022 U.S. Dist. LEXIS 6603, at *15 (W.D. Tex. Jan. 12, 2022). The movant filed a mandamus petition challenging this finding (among others), and the Federal Circuit denied mandamus and affirmed the District Court. *In re Micro Inc.*, 2022 U.S. App. LEXIS 12639, at *4 (Fed. Cir. May 11, 2022). Thus, *Kajeet* also shows that the District Court's holding was not error, or was at most harmless error that did not warrant reversal.

Apple also concedes the "district court is undoubtedly correct that witnesses experience some inconvenience to participate in any trial, even one close to home." Mot.13. Nevertheless, Apple argues the District Court "used this rationale to discount witness convenience entirely." Mot.12. But the District Court did not "discount...entirely" any witness inconvenience. The court plainly acknowledged that WDTX would be less convenient for any California witnesses. Appx0011. But NDCA is less

convenient for the many relevant Texas witnesses, which led the District Court to find this factor neutral. Appx0013.

Apple also repeats many of Qualcomm's arguments addressed above. Apple argues the District Court conflated §1404 and §1400 because the latter statue requires non-foreign defendants to have a "place of business" in the district. Mot.11. The District Court did not conflate these requirements. Its holding was based on the specific facts of this case— that Petitioners' massive Austin campuses with thousands of employees "could help to mitigate interruptions" in workflow. Appx0011, Appx1684-85. The court did not hold that its reasoning would apply to any mere "place of business," such as a smaller office.

Apple also parrots Qualcomm's argument that the "district court opined (without a record basis) that these witnesses could perform their usual work from Apple's and Qualcomm's facilities in Austin." Mot.8. But the Court's holding is supported by record evidence about Petitioners' Austin campuses. Appx1684-85. Moreover, this argument turns the burden of proof on its head—Petitioners are the ones with the "heavy burden" to prove that NDCA is "clearly more convenient" and that any convenience gains will "actually materialize." If Petitioners had wanted

29

CONFIDENTIAL MATERIAL REDACTED

to argue that their own employees could not work at their WDTX campuses, it was incumbent on Petitioners to prove that with evidence, which they did not do.

Apple makes the absurd claim "the district court…identified no basis for concluding that *any* Texas-based witnesses have relevant knowledge." Mot.14. Apple refers to employee declarations it submitted attempting to rebut RRA's evidence. Appx1145-47, Appx1166-208. Apple conceded that its non-technical employee declarants "have access to some sales data" and "may have information related to customer demand for the products." Appx3900-901, Appx1145, Appx1147. RRA also pointed out specific relevant knowledge demonstrated in Apple's non-technical employee declarations. Appx3900-901. **NAME** "work[s] with enterprise partners and Fortune 1000 companies…to understand their needs regarding Apple products" including iPhones. Appx1192 (¶2). **NAME** can access "financial statements for Apple from a global perspective." Appx1202 (¶5). **NAME** "works on sales of…[accused] iPad products to public sector customers." Appx1147. **NAME** "forecast[s] supply and demand needs" including convoyed sales of "accessories (e.g., Airpods, iPhone cases, and others)." Appx1180 (¶¶2-3).

RRA also pointed out specific relevant knowledge revealed in Apple's technical employee declarations. NAME has "knowledge about I-Q calibration" and "work[s] to minimize the I-Q mismatch" of accused product components. Appx1170-71 (¶¶3-4). NAME is "familiar with the concept of I-Q calibration" and failed to deny having knowledge about the accused hardware. Appx1174-75. NUMBER Apple engineers on NAME team, NAME and NAME did not even submit declarations of their own. Instead, NAME spoke to their knowledge. Appx1171-72 (¶¶6-9). Even then, Apple conceded NAME "has similar knowledge and experience" to NAME Appx1143. NAME could also only state, without support, that "[a]s far as [he] kn[e]w, NAME past work on I-Q mismatch has been very limited." Appx1171-72 (¶8). Contrary to Apple's protestations, many witnesses identified by RRA have relevant knowledge.

The District Court had mountains of evidence before it showing the relevance of Apple and Qualcomm teams with NUMBER of members in LOCATION and twenty-five specific relevant witnesses in WDTX (plus three in NDTX). Apple argues that it submitted "extensive sworn testimony demonstrating" its Texas witnesses are not relevant. Mot.14. As

discussed above, Apple's declarations ***do not*** demonstrate that Apple's Texas witnesses are irrelevant. Moreover, the District Court's role as factfinder was to weigh the credibility of evidence; it was not required to accept Apple's declarations as gospel in the face of contrary evidence.

## II.    Sources of Proof

The District Court correctly held "the greater access to ▮TEAM▮ technical and testing documents slightly disfavors transfer" and the "other arguments present little reason why this factor either favors or disfavors transfer. Therefore, this factor leans slightly against transfer." Appx0016.

RRA showed Apple and Qualcomm have relevant documents and custodians in WDTX, whereas Petitioners failed to identify sources of proof in NDCA. RRA also showed ▮TEAM▮ in ▮LOCATION▮ possesses relevant documents.

### A.    Apple

RRA proved relevant Apple documents and document custodians are in WDTX.

RRA identified five Apple technical witnesses in ▮LOCATION▮ and the ▮TEAM▮  ▮LOCATION▮ **TEAM**  Team.  Appx0177-91, Appx1618.  These

witnesses create and maintain relevant documents in Texas pertaining to infringement and damages, such as EVM. *Id.*

RRA also identified fourteen non-technical Apple witnesses in Texas and ▮NUMBER▮ Apple teams in ▮LOCATION▮ Appx1642-46, Appx1656-67. These people and teams create and maintain relevant damages documents. *Id.* Apple's ▮SYSTEM▮ database, "the source of truth of Apple's financials," is created, maintained, and accessed in ▮LOCATION▮ Appx1641-42, Appx2000 (32:11-13). ▮SYSTEM▮ stores quarterly revenue for accused products. Appx1641, Appx1989-90 (22:14-23:1, 23:16-22). Apple's ▮TEAM▮ team in ▮LOCATION▮ "maintains" the ▮SYSTEM▮ system. Appx1996-98 (28:21-30:19), Appx1998-99 (31:2-19). An ▮LOCATION▮ employee assigns ▮SYSTEM▮ access credentials. Appx2360 (18:18-19:12). ▮SYSTEM▮ servers are in ▮LOCATION▮ and ▮LOCATION▮, but ▮SYSTEM▮ custodians in ▮LOCATION▮ are relevant. *In re Google LLC*, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021) ("the location of document custodians" must be given weight).

Apple did not show it has ***any*** relevant sources of proof in NDCA. Apple's declarant stated "documents concerning testing or integration of the Qualcomm 5G transceivers" are in NDCA. Appx0129. Yet he conceded Apple has no technical documents about Qualcomm 5G

33

transceivers, and he did not know whether "testing or integration" is relevant. Appx2188-89 (199:24-200:11). Nor could he identify any relevant Apple technical documents in NDCA. Appx2181-82 (193:21-194:9), Appx2185-87 (197:5-198:11). The court had discretion to reject Rollins' statements. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("reasonable to reject vague and unsupported statements regarding…sources of proof").

Rollins never actually claimed non-technical documents are in NDCA. Instead, he carefully stated non-technical documents are "located in *or around* the NDCA *or accessible* in the NDCA." Appx0130-31, Appx2207-09 ("It could be in a data center that's located in Northern California, or it could be saved in a different location."). This hedging is telling.

Apple's interrogatory responses listed NDCA servers, but Apple did not say what they store, and Apple's responses said servers were listed "even if they are not 'Relevant Apple Databases.'" Appx2903-904. Rollins was unable to name *any* relevant information stored on NDCA servers. Appx2144-46 (160:11-162:16) ("I don't know specifically what data would be stored here…I did not do that specific investigation.").

34

CONFIDENTIAL MATERIAL REDACTED

To the extent any Apple NDCA server contains a relevant document, Apple testified that document would be remotely accessible in WDTX. Appx2146-47 (162:18-163:8), Appx2209-10 (218:4-24), *Planned Parenthood*, 52 F.4th at 630 (sources of proof given less weight where "the evidence was electronic, and therefore equally accessible in either forum").

## B.    Qualcomm

There are seven Qualcomm technical witnesses in █LOCATION█ and █NUMBER█ █TEAM█ teams. Appx1599-618 (¶¶83-137), Appx1647-48 (¶39). These people and teams create and maintain documents pertaining to infringement and damages. *Id.* At least two Qualcomm non-technical Texas witnesses are also relevant to damages and create and maintain damages documents. Appx1667-71 (¶¶73-77).

Qualcomm's declarants claimed technical documents are "generated by employees in Qualcomm's California Bay Area Offices *or San Diego Offices*." Appx0119, Appx0125. This statement makes it unclear which documents, if any, are "generated" in NDCA and does not clarify where they are stored. Qualcomm's declarant was unable to say where they are stored or whether any are "generated" outside California. Appx1904

(97:12-16) ("Q. Are any documents related to I-Q calibration…generated outside of California? A.…I don't know."), Appx1908 (100:20-23) ("Q. Are there any such documents located on servers in Austin? A.…I do not know."), Appx1908 (101:47) (he did not "investigate the locations of any servers").

Qualcomm also said its "finance group" is based in "San Diego and San Jose." Appx0117, Appx0123. But Qualcomm's declarant was unable to answer basic questions: "Q. Did you check whether any documents from the US-based finance group are in Texas? A. No." Appx1929-32 (119:22-121:23).

Qualcomm's interrogatory response identified twelve databases. Appx2963-65. None of those databases have a "primary server" in NDCA. *Id.*

The only relevant Qualcomm source of proof in California is source code, which was produced in Los Angeles. Appx1576 (¶20).

Qualcomm distorts the record. For example, Qualcomm incorrectly states "Qualcomm provided ***unrebutted*** evidence that relevant documents are generated and stored in NDCA." Pet.27. Qualcomm cites its declaration referencing documents stored at its "Bay Area Offices ***or***

***San Diego Offices***." Appx0125 (¶21). Qualcomm also cites its interrogatory response listing twelve databases, ***none*** of which have a "primary server" in NDCA. Appx1054-56. Qualcomm never properly identified any relevant document or server in NDCA.

Qualcomm also argues the District Court erred in finding Petitioners never "specified what information is on their servers in NDCA compared to servers in other locations." Pet.27. This finding was correct. The only NDCA documents Apple identified were its irrelevant "testing and integration" documents. Qualcomm has identified zero relevant documents or primary servers in NDCA.

Qualcomm also incorrectly argues "some of these documents are located only in NDCA and are not accessible remotely from WDTX." Pet.27. Qualcomm cites its declaration (Appx0125 (¶21)), which says ***nothing*** about remote access. When asked whether "the documents on Qualcomm's servers [are] accessible in Qualcomm's Austin office," Qualcomm's declarant said he did not know and did not investigate. Appx1934-35 (124:10-125:8). Apple testified its servers are remotely accessible in WDTX. Appx2146-2147 (162:18-163:8), Appx2209-2210 (218:4-24).

CONFIDENTIAL MATERIAL REDACTED

Qualcomm falsely claims it "identified that source code and financial information are stored on servers in NDCA, but not WDTX." Pet.27. Qualcomm again cites its interrogatory response. Appx1054-56. This response states that the "primary server" for Qualcomm's source code is in LOCATION. Qualcomm produced its source code in Los Angeles. The cited response does not even purport to say where "financial information" is stored, and Qualcomm's declarant did not investigate. Appx1931-32 (121:21-23).

Qualcomm also incorrectly claims "Apple specifically identified relevant financial information that was not accessible…in WDTX." Pet.27. Rollins testified he ***does not know*** what financial information can be accessed in WDTX, but "wouldn't necessarily be surprised if [Texas employees] could" pull sales information. Appx0423 (30:20-31:1), Appx0578 (168:13-21). Apple further conceded "if they are stored on a server or a network, then they would be accessible in Austin." Appx2209 (218:7-10), s*ee also* Appx2360 (18:18-19:12).

**C.**    ████

The District Court correctly found "the greater access to ████ technical and testing documents slightly disfavors transfer" because "████ manufactures and performs testing on wafers" in ████ Appx0016.

████ manufactures hardware for the accused products at its 10,000-employee facility in ████ Appx1582-83 (¶¶40-41), Appx1685-86 (¶114), Appx3029-88, Appx3091. ████ manufactures circuitry on silicon wafers. Appx1576-78 (¶¶21, 25). These wafers are subsequently cut into dies and placed into accused products. *Id.*

████ manufactures accused circuitry on the wafers, including the claimed "direct-conversion subsystem," "signal path for injecting," "RF transmit signal port," and "RF receive signal port." Appx1577-79 (¶¶25-29). ████ accounts for ██% of such US manufacturing. Appx1583 (¶41).

████ possesses sources of proof relevant to ***infringement***, including documents describing the accused circuitry and the physical wafers. Appx1584-85 (¶43).

████ also has ***damages*** evidence. Appx1571 (¶9), Appx3913-14 (¶¶6-7). ████ tests its wafers using test equipment. Appx3914 (¶7). EVM (an error measurement) is part of these tests because 5G and Wi-Fi

standards impose EVM requirements. *Id.* In the *Samsung* lawsuit, RRA proved damages using EVM improvement attributable to the '313 Patent. Appx1574-75 (¶¶15-17). **TEAM** pre-calibration EVM wafer tests are damages evidence. Appx3914-16 (¶¶8-10, 13).

Qualcomm incorrectly claims "the wafers…leaving the **TEAM** facility are incapable of…having EVM tests run on" them. Pet.29. Qualcomm cites Murias' testimony: "Q. [When] the wafers leave [**TEAM** can they transmit and receive RF signals over the airways? A. Do you mean without supplying power or an antenna or any of that? Q. Right. A. No, I'm not aware of any transceiver that can function as a transceiver without power and antenna." Appx1452 (117:23-118:6).

While wafers cannot send and receive radio signals without power or an antenna, it is demonstrably false that wafers are "incapable" of having "EVM tests run on" them. Petitioners cite no evidence of this claim.

All the evidence shows **TEAM** performs EVM tests on wafers. RRA cited a whitepaper stating typical "RF Wafer Measurements" include "***EVM***." Appx4123-26. RRA cited an article referencing **TEAM** "wafer testing operations." Appx4131-33. RRA cited a **TEAM** **LOCATION** job listing for a Test Engineer with expertise in EVM wafer test machines called "UFlex and

CONFIDENTIAL MATERIAL REDACTED

V93K." Appx4141. The V93K measures "RF IQ imbalance" and "RF EVM" and lists "EVM" among "common test parameters." Appx4145-48. The UFlex can also test wafer EVM. Appx3915-16 (¶12), Appx4143. Qualcomm's bald assertion that wafers are "incapable" of EVM testing is false.

Qualcomm claims the "record evidence is that Qualcomm, not **TEAM** performs the EVM testing." Pet.29. Qualcomm provides two irrelevant cites. First, Qualcomm cites its declarant's testimony, which never mentions "EVM testing." Pet.29; Appx0374-75 (137:8-138:5). Qualcomm omits the testimony where he was asked whether accused product EVM testing occurs in Austin. He responded, "I cannot answer that." Appx0337 (104:8-19).

Second, Qualcomm cites a document it claims shows "no Texas test sites." Appx1037-38; Pet.29. This document shows ***Qualcomm's*** "test sites," not **TEAM** sites. Qualcomm's declarant testified "I don't know" when asked "Do you know if EVM testing occurs at those sites?" Appx0308 (78:22-24). This spreadsheet neither shows that Qualcomm performs EVM testing, nor refutes the evidence that **TEAM** performs EVM testing in **LOCATION**

Qualcomm claims Murias "first contended that ██TEAM██ relevant data focused on wafer fabrication" but then "pivoted to speculating that ██TEAM██ possessed calibration data" "after the named inventor…testified that fabrication data was irrelevant." Pet.28.

First, this timeline is backwards. In Petitioners' incorrect telling, Murias submitted his first declaration, then the inventor testified, then Murias "pivoted." But the inventor's deposition occurred a month *before* Murias' first declaration. Appx0810, Appx1618.

Second, the inventor did *not* testify that "fabrication data was irrelevant." He testified the '313 Patent "doesn't talk about fabrication." Appx0898-900. RRA has never argued the patent "talks about" fabrication.

Third, Murias never "pivoted" to arguing "██TEAM██ possessed calibration data relevant to the measurement of EVM." His very first declaration discusses EVM test data in Texas. Appx1573-75 (¶¶14-18).

Petitioners argue ██TEAM██ EVM test data is irrelevant because RRA did not seek such data from ██TEAM██ in the *Samsung* litigation. Pet.29. That litigation involved different products not made by ██TEAM██ Moreover, Qualcomm's EVM data in the *Samsung* case only included pre-

CONFIDENTIAL MATERIAL REDACTED

calibration data for five of twenty-five chipsets. Appx3914-15 (¶9). The *Samsung* case shows RRA will need to go to Qualcomm's manufacturer (here, ▉TEAM▉ to obtain complete data.

Petitioners argue the court's statement that the "relevance of documents held by ▉TEAM▉ are likely to be small compared to" the parties' documents "contradicts" the holding that "greater access to ▉TEAM▉ technical and testing documents slightly disfavors transfer." Pet.28; Appx0016. These holdings are consistent. The court found the parties' documents were in both venues and therefore neutral. ▉TEAM▉ sources of proof in ▉LOCATION▉ tipped the scales and slightly disfavored transfer.

## D.    Apple's Motion

Apple echoes Qualcomm's incorrect claim that "Apple's and Qualcomm's documents relevant to the research, development, testing, and integration of the accused functionality are located in—and some are accessible only in—the Northern District of California." Mot.15. As discussed above, the only allegedly relevant documents Apple identified in NDCA were its "testing and integration" documents, which its declarant admitted are not relevant. And Qualcomm identified no relevant documents or servers in NDCA. Nor did Apple or Qualcomm

show that any document is "accessible only in" NDCA. Apple testified its documents can be accessed remotely in WDTX, and Qualcomm testified it did not investigate whether its documents can be accessed remotely in WDTX. Appx2209-10 (218:4-24), Appx1934-35 (124:10-125:8).

Apple also argues that by "crediting these [TEAM] documents of limited relevance over Apple's and Qualcomm's showing of highly relevant evidence in LOCATION the district court clearly erred." Mot.16. That is not what the District Court held. The Court correctly found that the only Apple or Qualcomm "documentation which has been explicitly stated as being stored in California is Qualcomm's source code" which is "stored in CDCA, not NDCA." Appx0015. The Court found Petitioners "have also not specified what information is on their servers in NDCA compared to servers in other locations" and made "no showing … that documents from any of Defendants' servers would not be accessible in WDTX." Appx0015-16. These correct findings, coupled with RRA's evidence about Petitioners' sources of proof in WDTX, led the Court to correctly conclude that there was no "increased ease of access to sources of proof being present in either venue." Appx0016.

Because the locations of Petitioners' evidence was neutral, but all of **TEAM** sources of proof are in **LOCATION** the District Court correctly held this factor "leans slightly against transfer." Appx0016.

## III.  The Availability of Compulsory Process

The District Court correctly held "this factor slightly disfavors transfer." Appx0018. The court found "it is likely at least one witness from **TEAM** will be called to testify regarding pre-calibration testing data" and "it may also be that **TEAM** witnesses can be called to discuss additional technical features of the Accused Products." Appx0018-19. The court also found it "unlikely" that Petitioners' "hand-picked" prior artist and paper author "will testify at trial." Appx0018.

### A.  **TEAM**

**TEAM** has information about topics relevant to infringement and damages. Given **TEAM** relevance and **NUMBER** **LOCATION** employees (Appx1685-86 (¶114)), the court correctly found "at least one" **TEAM** witness will testify.

Petitioners repeat their incorrect argument that "the **TEAM** wafers are not the accused products and are not functional." Pet.31. As shown, the **TEAM** wafers are EVM tested and are part of the accused products because they include accused hardware.

## B.     Mohindra and Zhang

The Court gave appropriate weight to the two people Petitioners identified in NDCA.

Mohindra is an inventor on a prior art patent cited on the face of the '313 Patent. He is one of thirty authors/inventors of references listed on the patent.

Zhang is an author of a paper RRA cited in its infringement contentions. He is one of twenty-eight authors of documents cited in RRA's contentions. Petitioners incorrectly claim Zhang authored "prior art," but his paper (2018) came years after the priority date. Pet.5. This mislabeling of Zhang begets Petitioners' further mistake of referring to prior art "witness*es*" (*e.g.*, Pet.31, Mot.16-17), when there is only ***one***, Mohindra.

Weighing these two people, the court correctly found they do not "provide much weight." Appx0017. The court found they were "hand-picked by the Defendants" from dozens of authors because they conveniently live in NDCA. Appx0017-18. Furthermore, "it is abundantly clear in this Court's experience that the authors of alleged prior art are unlikely to be utilized [at trial] over an expert witness." Appx0018.

46

The court is correct. A prior art patent is limited to its four corners; a prior artist's testimony cannot be used to supplement the reference. *See Wilson v. Martin*, 789 F. App'x 861, 868 (Fed. Cir. 2019) (prior art limited to "the four corners of the document"). Tellingly, Petitioners would "not commit to calling Mohindra or Zhang." Appx1151 (n.11).

Zhang is even less likely to testify. He authored a non-prior art document cited in RRA's contentions. RRA has stipulated it "will not call Dr. Zhang." Appx0149. Zhang is supposedly relevant to infringement, so there is no reason Petitioners would call him. No convenience considerations for Mohindra or Zhang will ever "*actually* materialize." *Clarke*, 94 F.4th at 508.

Qualcomm cites *Hulu* and *Dish*. In *Hulu*, this Court found "the district court erred by ***ignoring*** all of Hulu's proposed prior art witnesses," thereby "***zeroing out*** the weight of these witnesses without any case-specific analysis." *In re Hulu, LLC*, 2021 U.S. App. LEXIS 22723, at *8-9 (Fed. Cir. Aug. 2, 2021) (nonprecedential). Here, the court did not "ignore" or "zero[] out" anyone. Instead, it performed a case-specific analysis, noting Petitioners cherry-picked two individuals among dozens, and found these people did not "provide much weight" in comparison to

47

relevant ██████ witnesses. Appx0017-18. Qualcomm's cite to *Hulu* regarding the "heightened importance" of a witness (Pet.30) is inapposite because the *Hulu* witness "related to prior art systems discussed…in the specification," not a prior art patent limited to its four corners. *See Emerging Auto. LLC v. Kia Corp.*, 2024 U.S. Dist. LEXIS 111535, at *19 (E.D. Tex. June 14, 2024).

In *Dish*, this factor favored transfer where "DISH identified prior-art witnesses and [relevant] former employees" in Colorado but "no party identified a non-party witness in Texas." *In re Dish Network L.L.C.*, 2021 U.S. App. LEXIS 31759, at *7 (Fed. Cir. Oct. 21, 2021). RRA identified highly relevant ██████ witnesses in ████████ In *Dish*, the district court offered no "specific reason to believe that those identified witnesses would not testify." *Id.* Here, the court had good reasons to conclude Mohindra and Zhang are unlikely to testify—they are cherry-picked, one is not even a prior artist, RRA will not call them, and Petitioners will "not commit" to calling them.

The District Court weighed each witness, applying experience and common sense, which is precisely what the fact-finder has discretion to

do. *Volkswagen*, 545 F.3d at 311. Weighing this factor "slightly" against transfer was well-supported.

## C.    Apple's Motion

Apple's reliance on the additional cases *Juniper, Samsung* and *Netflix* is misplaced. Mot.17-18. That Apple would cite cases so far afield is telling.

There is *no* discussion in *Samsung* about prior art witnesses. Regarding compulsory process, in contrast to the present case, "not a single witness [was] identified as residing in or near the Western District of Texas." *In re Samsung Elecs. Co.,* 2 F.4th 1371, 1379 (Fed. Cir. 2021). Given "over a dozen third-party individuals" in Northern California, against zero in WDTX, the Federal Circuit found that the district court "erroneously discounted the convenience of third-party witnesses by presuming that 'only a few…non-party witnesses will likely testify at trial.'" *Id.* But no such discounting occurred here—the district court did not reduce a much larger number of witnesses to a "few." Instead, it weighed the ▮TEAM▮ witnesses against the two "unlikely" witnesses identified by Petitioners, and correctly found the ▮TEAM▮ witnesses deserved more weight.

49

CONFIDENTIAL MATERIAL REDACTED

*Juniper* is also of no moment because it was based on the same (here inapplicable) logic rejected in *Samsung* of reducing a much larger number of witnesses to a "few." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) ("We have also rejected the district court's categorical assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses…."). In *Juniper*, there were again ***no*** third-party witnesses in WDTX (as opposed to the ████ witnesses here). *Id.* at 1317, 1319. Given "four non-party prior art witnesses" in Northern California, against zero in WDTX, the Federal Circuit found the district court erred in finding this factor "weighed slightly against transfer." *Id.* But the Federal Circuit did ***not*** hold it was improper for the district court to find prior art witnesses are "unlikely to testify." Rather, the district court's error in *Juniper* was holding this factor disfavored transfer when all of the non-party witnesses were in NDCA.

*Netflix* suffers from similar flaws. The district court noted "patent prosecution attorneys, prior art inventors, and former Netflix employees" in Northern California. *In re Netflix, Inc.*, 2022 U.S. App. LEXIS 1390, at *5 (Fed. Cir. Jan. 19, 2022) (nonprecedential). The Federal Circuit first

rejected the district court's reliance on "its determination [] that Netflix had failed to show that the 13 non-party potential witnesses it identified in the Northern District of California would provide 'important' testimony." *Id.* at *10. This finding regarding "importan[ce]" has no bearing on the present case. Next, the Federal Circuit found the district court committed "error in ***categorically*** giving ***no weight*** to Netflix's patent prosecution attorneys." *Id.* at *11. But, as shown above, the district court here did not "zero out" or "categorically" dismiss Petitioners' prior art witness. The Federal Circuit also noted there were "far more third-party witnesses" in Northern California (*id.* at *12), which is yet another distinction given Petitioners' identification of only two "unlikely" witnesses.

Apple also fails to acknowledge that the Federal Circuit has denied Mandamus in multiple cases where the district court has given less weight to prior artists. For example, in *Viasat*, the compulsory process factor was found to be neutral, where the district court gave "prior artists some weight" but "discount[ed] them because they rarely appear at trial." *Viasat, Inc. v. W. Digit. Techs., Inc.*, 2022 U.S. Dist. LEXIS 227509, at *26 (W.D. Tex. Dec. 12, 2022). Subsequently, Western Digital filed a

mandamus petition challenging the district court's "discount[ing] the identified prior art witnesses 'because they rarely appear at trial' and accord[ing] only 'some weight' to the prosecuting attorney" but the Federal Circuit denied the petition. *In re W. Dig. Techs., Inc.*, Pet.23 (denied in 2023 U.S. App. LEXIS 5250 (Fed. Cir. Mar. 6, 2023)).

Similarly, in *Kuster,* the district court found "prior art witnesses are very unlikely to testify so the Court gives their location minimal weight." *Kuster v. W. Dig. Techs., Inc.*, 2021 U.S. Dist. LEXIS 25256, at *13 (W.D. Tex. Feb. 9, 2021). Western Digital argued "the district court erred in 'plac[ing] minimal weight' on the location of prior art witnesses." *In re W. Dig. Techs., Inc.*, Pet.19 (denied in 847 F. App'x 925 (Fed. Cir. 2021). The petition was again denied. *Id.*

## IV.   Local Interest

The District Court properly held "it is not clear that either WDTX or NDCA have a significant local interest. Therefore, this factor is neutral." Appx0025.

This factor considers "the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364.

52

CONFIDENTIAL MATERIAL REDACTED

The locations where accused products were "researched, designed, and developed" are relevant. *Samsung*, 2 F.4th at 1380.

Research, design, and development of Apple's and Qualcomm's 5G chips occurred in WDTX. Qualcomm's ██████ ████ and ████ teams developed Qualcomm's 5G chips. Appx1599-618. Apple's ████████ ████ team developed Apple's 5G chip. Appx1585-99. Neither Apple nor Qualcomm have identified *any* specific employees who developed 5G chips in NDCA. WDTX has a stronger local interest in Petitioners' 5G chips.

Qualcomm claims it has "four NDCA employees responsible for the Accused Wi-Fi 6 products." Pet.18. But RRA has shown that ████ and ████ team members in ████████ also developed Wi-Fi chips. Appx1599-618. Both venues have some local interest with respect to Wi-Fi development.

On this record, the court had discretion to weigh this factor against transfer, but conservatively found it neutral.

## A.    Qualcomm's Petition

Qualcomm argues "design and development took place overwhelmingly in the transferee forum." Pet.32. This is incorrect. Neither Apple's nor Qualcomm's declarants specifically identify *anyone*

involved in 5G development in NDCA, and Wi-Fi NDCA development is limited to the four Qualcomm witnesses discussed above.

Qualcomm also argues more weight should have been given to "Apple's engineering groups responsible for integrating Qualcomm's transceivers into Apple products." Pet.32-33. But these Apple engineers did not develop the Qualcomm 5G chips they integrate—Qualcomm did. They do not even know how Qualcomm's chips work. Appx2011 (42:11-13), Appx2189 (200:7-11). They are entitled to little, if any, weight.

## B.    Apple's Motion

Apple criticizes the District Court for "crediting speculation regarding the 'current development' of 'hardware features in Austin.'" Mot.18. This was not speculation. Apple's declarant testified that Apple's ███TEAM███ Team in ██LOCATION██ develops its accused 5G chip. Appx2244-45 (13:15-17, 14:14-16), Appx2074-78 (98:13-101:15). RRA also identified ██NUMBER██ specific members of this team in ██LOCATION██ and showed they design and develop Apple's 5G chip. Appx1585-99. RRA also showed the Qualcomm ██TEAM██ and ██TEAM██ teams in ██LOCATION██ design and develop Qualcomm Wi-Fi and 5G chip hardware, and identified seven specific, relevant

employees. Appx1599-618. The District Court properly credited this evidence.

Apple also argues that Petitioners' WDTX "hardware development is, at most, of limited relevance compared to Qualcomm's development and Apple's integration of the accused features in California." Mot.18. As noted above, neither Apple nor Qualcomm identified anyone who designs or develops 5G chips in NDCA, and Apple's "integration" engineers do not design or develop any chips. Apple does not design or develop in NDCA, and Qualcomm's NDCA design and development is limited to Wi-Fi 6. Qualcomm's limited NDCA design and development is of less importance than both Apple's and Qualcomm's extensive WDTX design and development.

## V.     Court Congestion

Petitioners do not challenge this factor.

The District Court found the time to trial in the Waco division is faster than NDCA. Appx0022. The evidence confirms this. Appx1678, Appx1768 (Waco 7 months faster than NDCA); Appx1681-82, Appx1777.  The court found this reduced congestion "would hold weight [and disfavor transfer] according to Fifth Circuit caselaw." Appx0021-23.

However, the District Court observed "Federal Circuit precedent appears to contradict Fifth Circuit rulings." Appx0021. The Federal Circuit has held "this factor should not weigh against transfer when the patentee is not engaged in product competition." *In re Meta Platforms, Inc.*, 2023 U.S. App. LEXIS 28709, at *5 (Fed. Cir. Oct. 30, 2023); Appx0021.

This contradicts Fifth Circuit precedent holding this factor weighs against transfer when the transferor forum is less congested, even without "product competition." No Fifth Circuit case holds "product competition" is relevant.

In *Planned Parenthood*, the Fifth Circuit held, despite no product competition, that this factor "counsels against transfer" because "the Amarillo Division is less congested." 52 F.4th at 631; *U.S. v. Planned Parenthood*, 2022 U.S. Dist. LEXIS 239972, at *5-6 (N.D. Tex. Sep. 20, 2022) (*qui tam* action involving no products).

Likewise, in *Clarke*, the Fifth Circuit noted "the district court is better placed to evaluate its docket efficiency" and held it did not err by giving weight to this factor, even though there was no product competition. 94 F.4th at 507-08, 510.

56

The Fifth Circuit's reasoning makes sense. This is a ***public*** interest factor. "Administrative difficulties follow ***for courts*** when litigation is piled up in congested centers." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *City of New Orleans Emples. Ret. Sys. v. Hayward*, 508 F. App'x 293, 299 (5th Cir. 2013) (recognizing "***court's interest*** in controlling a crowded docket").

Because Fifth Circuit precedent is controlling, *Meta*'s holding is not good law. The District Court encouraged RRA to raise this: "If this ruling is brought to appeal, and the Federal Circuit finds…the district courts are best situated to evaluate their own docket efficiency, as the Fifth Circuit held in *In re Clarke*, this Court believes that this factor weighs against transfer." Appx0022. The District Court's conclusion that this factor weighs against transfer is the only legally correct outcome.

## VI.    RRA's Expert Declarations

### A.    Qualcomm's Petition

The District Court properly weighed the testimony of RRA's experts. These experts provided analysis based on voluminous evidence (including dozens of exhibits, depositions, and discovery responses). Appx1567-618, Appx1628-86, Appx3912-23. Their analyses were anything but "conclusory," as Qualcomm argues. Pet.2,9,15-16,28.

Qualcomm claims the "expert analysis" "does not measure up under Fed. R. Evid. 702," but never provides any argument under Rule 702. Pet.2. Nor does it challenge the qualifications of RRA's experts[3] or the District Court's treatment of its argument below that "the court should give no weight to RRA's experts." Appx1126-32. This challenge, therefore, is waived. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.3d 792, 800 (Fed. Cir. 1990).

The court sitting as factfinder is empowered to weigh evidence, and a judge's role as gatekeeper is satisfied by such weighing. *Palm Valley Health Car, Inc. v. Azar*, 947 F.3d 321, 329-330 (5th Cir. 2020) ("[T]he procedural 'gatekeeping' aspects of *Daubert*…do not fully translate to bench trials: in reaching a decision, a judge will only rely on evidence the judge deems reliable."). The court recognized this: "it is the Court itself reviewing the declarations at this time, and not a jury." Appx0025.

Following these principles, the District Court properly weighed the experts' credibility just as it did with other witnesses. Qualcomm's

---

[3] Mr. Weinstein is a patent damages expert (Appx1632-35). Mr. Murias is a wireless transceiver expert (Appx1570-71).

criticisms are not challenges to qualifications or methodology, but disagreements with evidence.

## B. Apple's Motion

Apple's motion adds two new points regarding RRA's experts. First, Apple misleadingly claims "[t]hese declarations did not provide opinions about economic or technical matters, but instead offered assessments of the *Volkswagen II* transfer factors." Mot.6. Even a cursory review of Mr. Murias' initial and supplemental declarations show that they are all about "technical matters." For example, in his initial declaration he addresses "Issues Relevant to Infringement and Technology Value" and the "Qualcomm Accused Products—Infringement." Appx1571-79. He then addresses the "technical matters" concerning witnesses in Texas that work for Samsung, Apple, and Qualcomm. Appx1579-616. Mr. Murias' supplemental declaration similarly addresses numerous "technical matters." *See, e.g.*, Appx3913-16 (SAS technical issues); Appx3920-23 (SAS fabrication sites).

Likewise, Mr. Weinstein's declaration analyzes "economic matters" (*e.g.*, *Georgia Pacific* factors) to determine certain witnesses, teams and documents are relevant to damages. Appx1630, Appx1642-45, Appx1654-

73. The fact that Mr. Weinstein performs his analysis in the context of several transfer factors only underscores the relevance of his testimony.

Second, Apple states "[a]lthough the district court left open the possibility of a 'later challenge' to the declarations, [] it did not explain how such a challenge would be possible." Mot.7. Here, the District Court made the uncontroversial point that if RRA relies on these declarations in front of the jury, it will revisit any challenges. But that point was not "pressing" for the transfer motion, where the court sat as factfinder. Appx0025.

## VII.  RRA Does Not Oppose Apple's Request to Join the Petition

While RRA does not oppose Apple's Motion for Joinder, the request is not well-received. Apple and Qualcomm filed joint briefs in the lower court on all transfer issues. That process should have been repeated here, to the extent Apple wished to participate. It would have resulted in one joint petition, one response from RRA, and one joint reply brief. As it stands, Apple's Motion resulted in more briefing from every party, which was unnecessary.

This invites the question: why did Apple not file a joint Petition with Qualcomm? The most logical answer is that Apple did not feel the

Petition had enough merit to file one. As discussed above, Apple declined to file a mandamus petition in *Proxense*, which was decided a month before this case, even though the *Proxense* court made a number of findings similar to the ones Apple now attacks as "error."

Apple's reluctance to file a petition makes sense, given the weakness of Petitioners' arguments and the strength of RRA's record. Moreover, if Apple were comfortable with the Petition itself, there would have been no reason to add many pages of substantive briefing in Apple's Motion. *See* Mot.3-19. Considering these additional pages, Apple's Motion for Joinder is not so much a simple request to join; it is additional pages of substantive briefing added to Qualcomm's Petition. That additional substantive briefing is addressed by RRA above in discrete sections.

When RRA and Apple communicated about whether RRA would oppose the Motion, RRA was very clear that it would not oppose if Apple did not intend to file additional substantive briefing and would join Qualcomm in one "joint" reply brief. March 21, 2025 email from RRA counsel ("Red Rock will agree not to oppose the motion for joinder if Apple agrees it will not attempt to submit additional substantive briefing on the merits"). Apple refused to tell RRA whether the Motion would include

61

substantive briefing. In this light, the following statement in Apple's Motion is not accurate: "Red Rock has not provided its position on Apple's Motion." Mot.2. As shown, RRA was very clear about its position. Apple refused to respond to RRA's position, and it did exactly what RRA was concerned it would do by filing additional substantive briefing. Apple should have joined the Mandamus Petition from the outset if it wanted to participate.

## CONCLUSION

The Petition should be denied.

Respectfully submitted,

*/s/ Leslie V. Payne*
LESLIE V. PAYNE
MICHAEL F. HEIM
ALDEN G. HARRIS
HEIM, PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
(713) 221-2000
lpayne@hpcllp.com
mheim@hpcllp.com
aharris@hpcllp.com


S. CALVIN CAPSHAW, III
CAPSHAW DERIEUX LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ccapshaw@capshawlaw.com

*Counsel for Respondent Red Rock Analytics, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Leslie V. Payne, am counsel for Respondent. I certify that the preceding Combined Opposition to Qualcomm's Petition for Writ of Mandamus and Response to Apple's Motion for Joinder complies with the type-volume limitations of Rule 32(c)(2) of the Federal Rules of Appellate Procedure, and the word count limits of Rule 21(d)(1) and Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure.

In this combined brief, Argument sections I.F., II.D., III.C., IV.B., VI.B., and VII constitute RRA's Response to Apple's Motion for Joinder. These sections total 2,990 words, as indicated by the word count of the computer program used to prepare this response, which is fewer than the 5,200-word limit of Rule 27(d)(2)(A).

The remaining sections of this combined brief constitute RRA's Opposition to Qualcomm's Petition for Writ of Mandamus. These sections total 7,746 words, as indicated by the word count of the computer program used to prepare this response, which is fewer than the 7,800-word limit of Rule 21(d)(1).

The total word count of this combined brief is 10,735 words. This is fewer than the combined word count of Qualcomm's Petition (7,540 words) and Apple's Motion (3,477 words), which total 11,017 words.

Dated: April 10, 2025          /s/ *Leslie V. Payne*
                               Leslie V. Payne

**FORM 31. Certificate of Confidential Material**

**Form 31**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 25-123 ⊞

**Short Case Caption:** In Re Qualcomm Inc.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains 58 number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 04/10/2025

Signature: /s/ Leslie V. Payne

Name: Leslie V. Payne